WILLIAM DEITDERICK, RESPONDENT, v. MISSOURI IRON AND METAL COMPANY, APPELLANT.*

Kansas City Court of Appeals. April 30, 1928.

*Corpus Juris-Cyc References: Appeal and Error, 4CJ, section 2846, p. 870, n. 97; section 2847, p. 872, n. 19; Damages, 17CJ, section 436, p. 1106, n. 58; Master and Servant, 39CJ, section 1344, p. 1157, n. 18; section 1351, p. 1167, n. 72; section 1353, p. 1171, n. 88; Trial, 38 Cyc, p. 1657, n. 53; p. 1659, n. 54; p. 1785, n. 89; Witnesses, 40Cyc, p. 2522, n. 12; p. 2718, n. 10; p. 2733, n. 77.

*Brown, Douglas & Brown* for appellant.

*Mytton & Parkinson* for respondent.

ARNOLD, J.—This is an action in damages for personal injury. Defendant is a corporation engaged in buying and selling at wholesale, iron, junk iron and other metal commodities, with its plant located at 744 South Fourth street in St. Joseph, Missouri. On July 9, 1926, and prior thereto, the plaintiff was in the employ of defendant as a common laborer. On the date mentioned, defendant had on the tracks at the Missouri Pacific railroad yards a flatcar loaded with old railroad rails. The said car is described as approximately thirty-six feet in length and from eight to ten feet in width, the rails weighed approximately 700 pounds each, and were loaded lengthwise in the car. The most of them were about thirty feet long but some were shorter.

It was the desire of defendant to transfer said rails from the car on which they were then loaded to another flat car and the empty car to be used was "spotted" on the east side of the loaded car in the said railroad yards at a point a few blocks north of defendant's plant, or place of business; the two cars thus standing parallel on adjacent tracks which ran north and south, the loaded car being on the west. The rails were piled on the car to a height variously estimated at two and one-half to three and one-half feet above the floor of the car. Some wooden uprights, or standards at the east side of the loaded car which had held the rails during transportation to the yards, had been removed and placed on the east side of the empty car. The two cars were estimated by witnesses to have been some four feet or more apart. Three iron skids, eight to ten feet in length, provided by defendant, were placed with one end on the empty car and the other resting on the east edge of the pile of rails in the loaded car, and extending somewhat west of the east side thereof. The exact distance of such extensions is in dispute. Plaintiff claims the west ends of the skids were about six inches above the level of the top of the loaded rails, but this statement is disputed by defendant's witnesses. One of these skids was near the center of the two cars, from north to south; one about two feet north of the south end of the cars, and the third was about two feet south of the north end.

On the morning of July 9, 1926, plaintiff was directed by Jacob Adler, defendant's manager, to accompany its foreman, George F. Ferguson, and under his direction to aid in transferring the rails from the loaded to the empty car. Four men besides plaintiff went with Ferguson to do the work. It is in evidence that four men worked on the loaded car in lifting the rails up by means of iron bars about three to four feet in length and placing them on the skids, whereon they would slide down the incline onto the empty car where other men stationed there placed them in position. The foreman, Ferguson, and another worked at the south end of the loaded car while plaintiff and another workman were engaged at the north end.

It appears the general manager, Adler, came to the scene of the labor and was present somewhere about the cars both before and at the time of the accident in question. There is evidence that the skids were not fastened at the ends resting on the empty car; that an indefinite number of rails, perhaps eleven or twelve, had been transferred at the time of the injury; that in lifting the iron rails upon the skids, the rails would sag in the center, thus rendering it necessary to raise the ends thereof high enough to carry them over the end of the center skid; that when the rails were placed, or dropped onto the skids, the two end skids were caused to jar so much that they moved to the east, while the center, or middle one, retained its position; that this movement made the end skids a much less distance above the loaded rails than the center one. There is evidence to the effect that

after several rails had been thus transferred, Mr. Adler, the general manager, directed Ferguson, the foreman, to put something at the east end of the skids to prevent their skidding; otherwise they would become uneven and someone would be injured. Ferguson did not do as directed but continued the work as before. Plaintiff's testimony shows that at the time the injury was received the four men on the loaded car were engaged in lifting a rail for placement on the skids, and before plaintiff and the other man at the north end had raised their end high enough to clear the center skid, the men at the south end shoved the other end of the rail to the east, causing it to hit the center skid, being higher than the end skids, thus throwing the north end of the rail to the west and knocking plaintiff down in such a manner that his foot was caught between the rails on the car and he was caused to fall over the north end of the loaded rails, breaking a bone of his left leg, foot or ankle, and wrenching and spraining the muscles, tendons and ligaments thereof. Evidence in behalf of plaintiff is that foreman Ferguson gave the order to shove the south end of the rail before the north end was high enough to pass the center skid. There was testimony in behalf of defendant that the cause of plaintiff's fall was the slipping of his bar in attempting to raise the rail.

The petition charges negligence in that (1) defendant and its foreman in charge of the work carelessly and negligently failed to brace the iron skids or fasten the same in any manner to prevent them from slipping; (2) that defendant negligently required plaintiff to continue at his work with the skids at an uneven distance above the pile of rails, thereby carelessly and negligently furnishing plaintiff a dangerous and unsafe place to work; (3) that defendant carelessly and negligently furnished only four men, including plaintiff, to do the work upon the loaded car; (4) that defendant carelessly and negligently furnished too few men for doing the work safely, in that there were no men at the center skid to prevent its being struck by the rail being lifted; (5) that defendant carelessly and negligently failed and neglected to provide and promulgate any adequate rules for doing said work in safety; (6) that defendant negligently and carelessly gave the different men engaged in the said work different orders and instructions about the method of doing the work, thereby creating confusion, making the work dangerous and unsafe, and causing it to be done in a dangerous and unsafe manner; (7) carelessly and negligently caused the rail which was being lifted at the time of plaintiff's injury, to be shoved, thereby causing the south end of the rail to move east and down the skid, and the center of the rail to strike against the center skid and push the north end thereof west, knocking plaintiff down and causing his injury.

The petition alleges that plaintiff was in the exercise of ordinary care at the time of the injury. Damages are sought in the sum of $15,000.

The answer admits the corporate *status* of defendant and that plaintiff sustained some injury while employed by defendant about the time and place mentioned in the petition, and denies all other allegations therein contained. As affirmative defense the answer pleads: (1) assumption of risk; (2) contributory negligence; and (3) that if, as alleged in the petition, the north and south skids described in the petition had been allowed to slip down, thereby allowing the middle skid to extend further into the loaded car, and to be higher than the end skids and in such position as to render the work of unloading dangerous or unsafe, plaintiff knew that fact; and that he was guilty of contributory negligence in failing to make complaint of such conditions and in continuing to work under such circumstances, and his own negligence in this respect contributed directly to cause the injuries sustained by him. Upon the issues thus made the cause was tried to the court and jury. Verdict for plaintiff in the sum of $4500 was signed by eleven of the jurors and judgment was entered accordingly. Motions for a new trial and in arrest were overruled and defendant appeals.

It is urged the court erred in permitting plaintiff repeatedly to give his opinions and conclusions as to what caused the accident complained of, and that the admission of such evidence is reversible error. Defendant's brief sets out with particularity the questions and answers to which objection was made as calling for opinions and conclusions; all of these objections were overruled by the court. The charge of error is based upon the examination and cross-examination of plaintiff, some of which it is deemed advisable to quote here. On cross-examination plaintiff testified as follows:

"Q. The sole cause of this accident was the fact that Mr. Ferguson said 'shove' and they shoved before you were ready?

"MR. PARKINSON: We object to that as calling for a conclusion. He can ask what the cause was, but he cannot put in the word 'sole' cause of the accident. I am objecting to that as improper and asking a legal conclusion of the witness and the witness is not required to give any legal conclusion.

"THE COURT: Answer the question, if you can.

"A. What was it?

"Q. The sole cause of the accident was the fact that Mr. Ferguson said 'shove' and they shoved too quickly? A. Yes, sir.

"Q. That is what caused the accident? A. Yes, sir."

Following this, on redirect examination, Mr. Parkinson asked:

"Q. When he says 'sole cause,' did the fact that the skids had moved contribute to it? Was it the cause?

"Mr. Brown: That is objected to as cross-examination of his own witness, leading and suggesting the answer he wants him to give.

"Q. You tell the jury what caused you to get hurt there? A. Just getting a rail out and he said 'shove' before we were ready and knocked the bar out of my hand. It hit the center skid and knocked the bar out of my hand, causing me to fall and I fell between the two rails and broke my leg.

"Q. What, if anything, did the failure to brace the skids have to do with it, if anything?

"Mr. Brown: That is objected to as calling for a conclusion.

"The Court: If that had anything to do with it, he may answer. Overruled."

(To which ruling of the court defendant at the time excepted.)

"Q. You tell all the causes of your injury. A. Well, cause of it was not bracing the skids at the bottom, not keeping them even at the top, not so they wouldn't slip and give us a chance to throw the rails over even.

"Q. What other causes were there, if any?

"Mr. Brown: We object to that as assuming that there were other causes, calling for a conclusion.

"A. The cause of it was the two end skids slipping and leaving the center one high and we could not raise the center one high enough to get over that center skid.

"Q. What, if anything, did the fact that there was no man at the center have, if anything, to do with it?

"Mr. Brown: We object to that as calling for a conclusion of the witness, leading his own witness.

"The Court: Simply recite the facts, if he knows them.

"Q. State whether or not the fact that there was no man at the center had anything to do with it? As one of the causes?

"Mr. Brown: That is objected to as calling for a conclusion.

"The Court: I do not think it is calling for a conclusion if this witness knows."

To which ruling of the court the defendant at the time excepted.

"A. If there had been a man in the center who would have lifted it over that center skid, it wouldn't have hit there.

"Q. Was that one of the causes? A. Yes, sir.

"Q. What, if anything, did you find that existed there and the failure to have rules, if anything, as the cause—was that one of the causes?

"Mr. Brown: That is objected to again as calling for conclusion of the witness and calling for his opinion and not stating facts and I object to all the other questions and ask that the answers be stricken out. He has been over all of that fully and told all that was done; that Ferguson said 'shove' and nobody else shoved.

"THE COURT: You gentlemen have asked this witness to try to tell what he thinks was the cause of this accident. He may do so."

To which ruling of the court defendant at the time excepted.

"Q. What was the other cause? The man in the center you have mentioned and the skid slipping and not being braced and the foreman shoving before the time, what was the other cause if there was one?

"MR. BROWN: That is objected to as assuming and for the reasons stated.

"THE COURT: Objection overruled excepting let's not assume there was another cause."

To which ruling of the court defendant at the time excepted.

"Q. What was the cause of your getting hurt? A. The cause of my getting hurt because he hollered 'shove' and shoved too soon, knocked the bar out of my hand and caused me to fall; hit me.

"Q. What was the other cause, if any?

"MR. BROWN: Objected to for the same reason.

"A. Catched on the middle skid. There was no man there to lift it in the middle.

"Q. Was there any further cause? A. There wasn't enough men to handle the rails.

"Q. What other causes were there, if any? A. None that I know of only that.

"Q. You have named three. Nothing to brace the skids? A. Yes, sir.

"Q. No man in the center? A. Yes, sir.

"Q. And shoving before the time? A. Yes, sir."

It is observed that the line of questions against which the error is directed had its inception in the cross-examination conducted by defendant's counsel. "Conclusion" is sometimes used as a synonym for "inference." We are not unmindful of the very wholesome and well-established rule that opinions of witnesses, other than experts, may not be admitted, a rule supported by defendant's citations and which plaintiff does not dispute. As already stated, counsel for defendant in his cross-examination indulged in the same line of questions he condemns in plaintiff's counsel. The trial court in ruling on one of the objections tersely stated the situation, saying:

"You, gentlemen, have asked this witness to try to tell what he thinks was the cause of this accident. He may answer."

We think the trial court properly ruled on defendant's objections.

Appellant urges the court erred in sustaining an objection to a question propounded to plaintiff on cross-examination, as follows:

"Q. You have told the facts as you told them in your deposition?" Plaintiff's counsel objected on the ground that "the deposition is the best evidence." It is urged that by such ruling defendant was denied

the right to cross-examine plaintiff with respect to his deposition previously given. We think the point is without merit. The manner in which a witness properly may be cross-examined relative to a deposition previously given is well stated in Shull v. Kallauner, 300 S. W. 554, 555, an opinion by this court, in which appears a citation from Peppers v. Railroad, 295 S. W. (Mo. Sup.) 757, 762, as follows:

"In impeaching a witness by use of a deposition, we declare it the proper procedure, after having the witness identify the instrument by identifying his signature, and after exhibiting to the witness the deposition, if he asks to see it, to read to the witness from the deposition a question, or questions, and answer, or answers, and ask him if he did not so testify; and such procedure may be repeated. This permits the witness to explain the answer, if desired. Then the impeaching party must offer and read in evidence all the detail matter about which he interrogated the witness. Following this, the other party may examine the witness to rehabilitate his testimony, if he deems it necessary or desires so to do, and may offer the whole deposition or such portions as desired, if not otherwise irrelevant or incompetent. If the witness has not signed the deposition, he may be impeached, as for any other parol statement, preferably, however, by having the reporter taking the deposition read his original shorthand notes. We think the trial court erred in refusing to permit this method of examination."

Under the ruling in the cited cases we must conclude defendant did not proceed properly to question plaintiff relative to his deposition. The ruling of the court was proper.

At the close of plaintiff's evidence defendant asked the court to sustain a demurrer thereto; and at the close of all the evidence, the court was asked to give an instruction for defendant in the nature of a demurrer, but the court refused both offers and these rulings are assigned as error. In support of this charge of error, it is urged that while the petition specified several acts of negligence, the allegations finally were limited to the charge that by reasons of the end skids having slipped down, the west end of the center skid was left an inch or two higher than the west end of the other skids. It was plaintiff's theory that there was negligence on the part of defendant in not bracing the skids, and there was evidence in support thereof; also that this situation was called to the attention of the foreman by plaintiff; that Mr. Adler, the general manager, had suggested to the foreman that the skids should be braced and that the foreman directed plaintiff to go on with his work, after the foreman's attention had been called to the fact that the end skids had slipped down. There was evidence also tending to show that the foreman had given orders to shove the rail over before plaintiff had lifted his end thereof high enough for it to pass over the end of the center skid; thus causing

the north end of the rail to move west, strike plaintiff and injure him. This testimony was contradicted by defendant's witnesses, but this situation merely created a question of fact for the jury's determination. Plaintiff's proof supported the allegations of the petition, and it was therefore the duty of the court to send the case to the jury. The ruling of the court in this respect was proper.

Complaint is lodged against plaintiff's instruction No. 1, the objection being that the instruction purports to cover the entire case and directs a verdict and that it should have embodied every element necessary for plaintiff's recovery, and that such a necessary element is that plaintiff was in the exercise of ordinary care. It is pointed out that the instruction complained of is faulty in that it required the jury to find plaintiff was in the "exercise of care" when it was plaintiff's duty to exercise "ordinary care."

At most plaintiff's instruction No. 1 is vague in that it does not define the degree of care required of plaintiff. However, defendant's instruction F-1 clearly defines the care necessary to be exercised by plaintiff as a necessary element of his right to recover; and in this situation we cannot hold instruction No. 1 fatally defective. While the instruction might have employed language making it plainer, it does not fall within the class of cases where there is an entire failure to contain all the elements necessary for plaintiff's recovery, but is one where the instruction is somewhat obscure in its meaning and this obscurity is cleared by other instructions in the case. This rule was declared in Sutter v. Rys., 208 S. W. 851, 853, an opinion by this court in a case not exactly on all fours with the case at bar, but clear in the declaration of the rule. [See, also, Cornovski v. Transit Co., 207 Mo. 263, 106 S. W. 51; Deschner v. Railroad Co., 200 Mo. 310, 98 S. W. 737; Tranburger v. Railroad Co., 250 Mo. 46, 156 S. W. 694.] We rule against defendant on this point.

A charge of error is based upon the refusal of the court to give defendant's requested instruction F. By this instruction defendant sought to have the jury told that if it should be found that plaintiff did not say anything to defendant's foreman about the alleged slipping of the skids and if he made no complaint about it and voluntarily continued to work, the verdict should be for the defendant. Instruction F, as offered, possessed a vice that rendered its refusal proper, to-wit, that it states "that even if you should believe and find from the evidence that the end skids had slipped down in the manner alleged in the petition," etc. Reference in an instruction to the allegations in the petition is never proper if the point is a controverted fact as it is here. [Priestley v. Laederich, 2 S. W. (2d Series), 631; Sinnamon v. Moore, 161 Mo. App. 168, 142 S. W. 494; Grant v. Railway, 25 Mo. App. 227.] We rule against defendant on this point.

Finally, it is urged the verdict is excessive and the judgment should be reversed for that reason. We are loth to interfere and declare a verdict excessive unless it clearly appears from the record that the verdict was the offspring of improper motives or prejudice on the part of the jury, or is so excessive as to shock the conscience of the court. There is evidence of record that the small bone in plaintiff's left leg was broken and the principal nerve therein crushed and damaged. There was also evidence that the injuries are permanent and will largely interfere with plaintiff's ability to do manual labor wherein he is required to stand on his injured leg. Plaintiff was before the court and the jury. The jury placed his damages at $4500 and the court refused to interfere in considering the motion for a new trial. While such action of the court and jury does not bind us, it is proper that we should give it due deference. We do not think we are justified in interfering with the verdict and judgment. For reasons above stated the judgment is affirmed. *Bland, J.,* concurs; *Trimble, P. J.,* absent.