DONALD CONROY, by T. A. CONROY, His Next Friend, v. ST. JOSEPH RAILWAY, LIGHT, HEAT & POWER COMPANY, Appellant.—134 S. W. (2d) 93.

Division One, December 13, 1939.

*Mayer, Conkling & Sprague* for appellant.

*Culver, Phillip, Kaufmann & Smith* for respondent.

BRADLEY, C.—Plaintiff, a minor, was injured in St. Joseph, Missouri, in a collision between an automobile in which he was riding as a guest, and a trolley coach of appellant.  Suit, asking for $25,000,

594

was filed against the appellant, and Sylvester Kirschner, operator of the trolley coach, and Edward Fanning, a minor, and driver of the automobile, and Leith Fanning, sister of Edward and owner of the automobile. At the close of the case, plaintiff dismissed as to Kirschner and Leith Fanning. The jury found for the appellant, railway company, and against Edward Fanning, assessing plaintiff's damages at $1000. Plaintiff filed motion for a new trial which was sustained as to the appellant on the alleged ground that the court erred in giving Instruction C on its behalf, and was sustained as to Fanning on the ground that the damages assessed were inadequate. The appellant and Fanning appealed, but Fanning did not perfect his appeal and the same was dismissed.

■ Appellant contends that Instruction Č was not erroneous, and that its demurrer to the evidence, at the close of the case, should have been sustained. If plaintiff failed to make a case against appellant, then any error in Instruction C matters not. [Lappin v. Prebe et al., 345 Mo. 68, 131 S. W. (2d) 511, and cases there cited.]

Plaintiff alleged several grounds of primary negligence and negligence under the humanitarian doctrine, but submitted his cause, as to appellant, solely under the humanitarian doctrine. The collision occurred about 9:15 A. M., May 23, 1936, and near the east side of the intersection of Noyes Avenue, a north and south street, and Jules Street, an east and west street. The trolley coach, operated from a trolley wire, approached the point of collision from the west on Jules Street, and the automobile approached from the north on Noyes. ·

In view of our conclusion as to Instruction C, it is not necessary to detail the facts in order to determine whether plaintiff made a submissible case against appellant. The order sustaining the motion for a new trial, as to appellant, recites that it was sustained "on the ground that Instruction C given for the defendant, St. Joseph Railway, Light, Heat and Power Company, in one portion thereof, requires of the driver of the vehicle for said defendant, St. Joseph Railway, Light, Heat & Power Company, only the degree of care exercised *by a reasonably prudent person,* instead of requiring the degree of care which would be exercised *by a very prudent person.* And that said Instruction C insofar as it requires only such care on the part of the said driver as would be exercised *by a reasonably prudent person* is in conflict with the balance of said Instruction C and with Instruction D given for said defendant, St. Joseph Railway, Light, Heat and Power Company, and also with the instructions of the plaintiff; wherein *the highest degree of care* is required of the driver of said vehicle for the defendant, St. Joseph Railway, Light, Heat and Power Company" (Italics ours).

Instruction C follows: "The court instructs the jury that if you find and believe from the evidence that at the time the trolley coach mentioned in evidence entered the intersection of Noyes Boulevard

and Jules Street, the Ford automobile in which plaintiff was riding was a sufficient distance north of said intersection as that said Ford automobile, by the exercise of the highest degree of care, could have been stopped or slowed down or driven along the west side of Noyes Boulevard, and the collision of the vehicles thereby avoided, and if you further find that there was nothing about the movement of the Ford automobile, or the manner in which it was being driven, or any conduct or action on the part of the occupants of the Ford automobile, to indicate to a *reasonably prudent person* operating a trolley coach that the occupants of the Ford automobile were helpless or oblivious of the presence and proximity of the trolley coach, or that the Ford automobile would not stop before entering the intersection, or would not pass behind the trolley coach, if you so find, then you are instructed that the operator of the trolley coach had the right to assume and believe that the Ford automobile would be stopped or slowed down or driven along the west side of Noyes Boulevard, and a collision thereby avoided, if you find that by stopping or slowing down or driving said Ford automobile along the west side of Noyes Boulevard, said collision could and would have been avoided, and you are further instructed that if you find and believe from the evidence that the trolley coach entered said intersection before the Ford automobile entered said intersection, and that said Ford automobile was a sufficient distance north of said intersection as that said Ford automobile, by the exercise of the highest degree of care, could have been stopped or slowed down or driven along the west side of Noyes Boulevard and the collision thereby avoided, the operator of the trolley coach had the right to enter and proceed across said intersection, and was under no duty to begin to stop the trolley coach until he saw, or, *by the exercise of the highest degree* of care, could have seen that the occupants of the Ford automobile were helpless, or oblivious to the danger of a collision, or that there was no intention to stop said Ford automobile before driving the same into a collision with the trolley coach'' (Italics ours).

Plaintiff contends that the trolley coach was a *motor vehicle* within the meaning of Section 7775, Revised Statutes 1929 (Mo. Stat. Ann., sec. 7775, p. 5197), which provides, among other things, that ''every person operating a motor vehicle on the highways of this state shall drive the same in a careful and prudent manner, and shall exercise the highest degree of care . . .'' Section 7759, Revised Statutes 1929 (Mo. Stat. Ann., sec. 7759, p. 5179), defines a *motor* vehicle as ''any self-propelled vehicle not operated exclusively upon tracks, except farm tractors.''

It is not necessary to rule, and we do not rule, as to whether the trolley coach here involved is a *motor vehicle* within the meaning of Section 7775, and the highest degree of care required of the operator thereof under Section 7775. We think that Instruction C, especially

when considered with other instructions, required the highest degree of care on the part of the operator of the trolley coach, and that the jury so understood it, and that plaintiff was not prejudiced by the words *reasonably prudent* in the instruction. In Borgstede v. Waldbauer et al., 337 Mo. 1205, 88 S. W. (2d) 373, an instruction defined *highest degree of care* to mean "such care, skill, and foresight as a very competent and prudent person would use and exercise under like or similar circumstances." The definition was condemned because it required more of the driver of an automobile than required by law. In the opinion (88 S. W. (2d) l. c. 376) is this: "If a person possesses the skill of the average driver and exercises the highest degree of care in averting an impending injury in an emergency, under the humanitarian doctrine he has discharged his duty, even though he fails in the attempt where the exercise of the skill possessed by a very competent driver might have averted the injury."

The term *prudent* does not necessarily connote *care*. Webster's New International Dictionary, second edition, defines *prudent* as "characterized by, arising from, or manifesting prudence; as prudent rulers, actions, or laws; capable of directing or conducting oneself wisely and judiciously; morally or intellectually disciplined; cautious, circumspect, or discreet, as in conduct, choice of ends, or business management; not rash or ill advised; highly sensible; often frugal; provident." Synonyms are cautious, wary, considerate, economical, frugal. Antonyms are unwise, shortsighted, imprudent, indiscreet. It will be observed that *careful* is not given, by Webster, as a synonym of prudent.

As appears, when Instruction C got down to telling the jury what *care* was required of the driver of the trolley coach the jury was plainly told that the highest degree of care was required. Not only did Instruction C so tell the jury, but Instruction D given for appellant told the jury *four* times that the highest degree of care was required of the trolley coach operator. And plaintiff's Instruction No. 1 so told the jury twice, and plaintiff's Instruction No. 4 was to the same effect.

In view of the fact that the jury was told eight times, in the instructions, that the operator of the trolley coach was required to use the highest degree of care in the operation thereof, it is, we think, unreasonable to say that the jury could have got the motion that the instructors did not require the highest degree of care on the part of the operator of the trolley coach in the operation thereof. Able counsel appreciate this situation, and say, in the brief, that "where the trial court grants a new trial, even if the error is not sufficient to reverse the judgment, yet in support of it this court will presume that the trial court with its better knowledge of the trial and the effect the error may have had upon the result, acted accordingly in sustaining the motion," citing Bunyan v. Citizens' Railway Co., 127 Mo. 12,

29 S. W. 842; Hoepper v. Southern Hotel Co., 142 Mo. 378, 44 S. W. 257; Ittner v. Hughes et al., 133 Mo. 679, 34 S. W. 1110; Stafford v. Ryan (Mo.), 276 S. W. 636; Wolfson v. Cohen (Mo.), 55 S. W. (2d) 677.

In the Bunyan case, supra, it appears that a pedestrian was killed by a cable car in St. Louis. The verdict was for the defendant, and a new trial was granted because of error in an instruction given at the request of the defendant. In affirming the order granting the new trial this court said (127 Mo. l. c. 22, 29 S. W. 842): "It (the instruction) wholly ignored the evidence of the gripman (operator) and his duty to prevent the injury as soon as he saw that deceased was carelessly walking onto the track. The petition charged negligence in failing to stop the car in time to prevent the accident. This averment was sufficient to authorize the admission of evidence that the gripman knew that deceased was not going to stop, especially when no objection was made to it when offered. Indeed, this evidence was introduced by defendant himself. We are of the opinion that error was committed in giving this instruction."

The plaintiff in the Hoepper case, supra, was injured while operating a steam clothes wringer. Verdict was for the defendant. A new trial was granted because of error in the instructions given for defendant, and such was affirmed. The ruling is briefly and correctly reflected in headnotes 3 and 5 (142 Mo. 378, 44 S. W. 257) as follows:

(3) "Instructions faulty because of unnecessary repetitions and because they contain simple abstract propositions of law will not generally authorize a reversal of a verdict; yet if the trial court has given a new trial because of such mistakes, an appellate court will not interfere unless it has clearly abused its discretion."

(5) "An instruction that told the jury that 'defendant cannot be chargeable in this action unless the injury is of such a character, in the manner of its occurrence, as might have reasonably been foreseen or expected by defendant, as the natural result of the machinery running roughly and jerking' was erroneous. If the injury follows as the direct consequence of the negligent act, the defendant cannot be excused because the injury was not foreseen."

In the Hoepper case, supra (142 Mo. l. c. 387-8, 44 S. W. 257), the court said: "The presumption is always in favor of the correctness of the rulings of the circuit court. It has committed to it much discretion in the matter of granting new trials, and this court should not interfere unless its discretion has clearly been abused. It is therefore uniformly held that an appellate court will not interfere with the discretion of the circuit court in granting a new trial on the ground that the verdict is against the weight of the evidence. The proceedings are all in the presence of the court and it can better judge of the fairness of the trial than the appellate court, which has before it

the cold record only. For the same reason an appellate court should hesitate to interfere with an order granting a new trial on the ground that the instructions are misleading. The order is presumptively correct. The judge who presides over the trial, and who hears the arguments of counsel and the construction given to the instructions, can detect inconsistencies and misleading features which might escape the observation of appellate judges.''

It is not necessary to state the situation in the other cases cited. There is nothing in either of them more favorable to plaintiff's claim in the present case than in the Hoepper case, supra. We might say, however, in the Ittner case, supra, it is stated (133 Mo. l. c. 692, 34 S. W. 1113), that ''to warrant reversal of an order for new trial it must clearly appear that no error occurred that may possibly have been prejudicial to the party who applied for the new trial.''

It will be noted that the excerpt quoted, supra, from the Hoepper case concludes as follows: ''The judge who presides over the trial, and who hears the arguments of counsel and the construction given to the instructions, can detect inconsistencies and misleading features which might escape the observation of appellate judges.''

In the present case it would be far fetched, indeed, to say that it is *possible* that counsel, in argument, suggested to the jury that the operator of the trolley coach was not, under the instructions, required to exercise the highest degree of care. We do not think it reasonably possible that plaintiff was prejudiced by Instruction C.

We find no error in the record to support the order granting plaintiff a new trial as to appellant, hence the order or judgment granting the new trial as to appellant should be reversed and the cause remanded with directions to set aside the order granting the new trial as to appellant, and to reinstate the verdict in favor of appellant, and enter judgment thereon. It is so ordered. *Hyde* and *Dalton, CC.,* concur.

PER CURIAM:—The foregoing opinion by BRADLEY, C., is adopted as the opinion of the court. All the judges concur.