CRESSIE HAMRE, Appellant, v. FLOYD CONGER and DON CONGER.—No. 40695.—209 S. W. (2d) 242.

Division One, March 8, 1948.

Ben W. Swofford, Robert L. Jackson and Laurence R. Smith for appellant.

*Arthur C. Popham, Arthur C. Popham, Jr.,* and *Sam Mandell* for respondents; *Popham, Thompson, Popham, Mandell & Trusty* of counsel.

[244] BRADLEY, C.—Plaintiff (appellant) brought this suit against Floyd and Don Conger, father and minor son, for personal injuries resulting from a collision between the car the son was driving and owned by the father, and the truck driven by plaintiff. Defendant Floyd Conger, the father, counterclaimed for $2750 against plaintiff for damage to his car and loss of services of and medical care for his minor son. The son counterclaimed for $10,000 against plaintiff for personal injuries received in the collision. Before the commencement of the trial plaintiff dismissed as to defendant Floyd Conger. The jury returned a verdict in favor of plaintiff and against the minor son, Don Conger, for $10,000, and found in favor of plaintiff on both counterclaims. Don Conger's motion for a new trial on the $10,000 judgment against him and on his counterclaim were sustained and Floyd Conger's motion for new trial on his counterclaim was sustained. As ground for sustaining these motions the

trial court specified error in plaintiff's instructions 1 and 2. Plaintiff appealed.

Plaintiff was maintenance technician of airplane signals for the Civil Aeronautics Administration at Kansas City, and at the time of the collision was on his way in his employer's Chevrolet truck to repair what is termed a fan marker at Excelsior Springs. He was traveling east on U. S. highway 69, a paved highway. Defendants reside at Independence. It was Sunday afternoon; defendant Don Conger had his father's car, a Pontiac, and he and three other boys had driven to Excelsior Springs. At the time of the collision Don and the other boys were returning to Independence (Don driving) and were going west on U. S. highway 69. State highway 33, a north and south gravel road, intersects U. S. highway 69 west of Excelsior Springs. Independence is south of this intersection, and Don was in the process of turning left (south) at the time of the collision.

Plaintiff alleged several grounds of negligence but submitted his case on the alleged negligence of Don in turning his car to the left under the conditions obtaining. The counterclaims of defendants were submitted on the humanitarian rule that plaintiff could have stopped or slowed down and avoided the collision. Defendant Don Conger in his answer to plaintiff's petition charged plaintiff with contributory negligence, and it is contended that plaintiff was guilty of contributory negligence as a matter of law.

The facts, most favorably stated for plaintiff, are as follows: The intersection of U. S. highway 69 and State highway 33 is at the top of a small hill. The foot of the grade on the west is about 500 feet from the intersection and from the foot of the grade visibility to the east did not extend east of the intersection, but only to the intersection. Near the intersection on the south side of highway 69 was a slow sign. It was a clear day; roads were dry. Plaintiff approached the intersection from the west at about 45 miles per hour on the south side of highway 69. There was no eastbound traffic on highway 69 between plaintiff and the intersection. It was about 4:30 p. m. and there was considerable traffic on highway 69 going west towards Kansas City; "typical Sunday afternoon traffic approaching Kansas City; it was just a continuous string of cars." One hundred feet west of the intersection visibility extended 100 feet east of the intersection to the extent that the top of a car could be seen. Plaintiff was about 50 feet west of the intersection when he first saw the Conger car about 150 feet away "coming up the hill" east of the intersection and directly in front of plaintiff and south of the line of the westbound traffic on highway 69. There were, at that time, about a half dozen westbound cars on highway 69 on and immediately east and west of the intersection. The speed of these was 35 or 40 miles per hour. The collision occurred about 18 inches south of the south side of the concrete slab of highway 69 and near the

east side of highway 33. According to defendants' evidence the collision occurred a few feet south of the slab on highway 69 and west of the center of highway 33. There was no evidence that plaintiff slowed down prior to the collision, however, his foot brake was down after the collision. Also, there was evidence that plaintiff was driving 60 or 65 miles per hour. Plaintiff and Don Conger were rendered unconscious by the impact.

[245] If plaintiff was guilty of contributory negligence as a matter of law such would dispose of his case for damages against Don Conger, regardless of instructions, so we first dispose of that question. If from the consideration of all the evidence favorable to plaintiff it appears so convincingly that reasonable minds could come to only one conclusion, that is, that plaintiff did not exercise the highest degree of care for his own safety, then he was guilty of contributory negligence as a matter of law. Russell v. Johnson, 349 Mo. 267, 160 S. W. (2d) 701; Mosely v. Sum et al., 344 Mo. 969, 130 S. W. (2d) 465, l. c. 469, and cases there cited. It is not necessary to deal further with the evidence. The salient facts appear supra, and considering the evidence favorable to plaintiff we think the question of his negligence was one for the jury.

Were plaintiff's instructions 1 and 2 erroneous as the trial court ruled in granting the new trial? Plaintiff's instruction No. 1 submitted his case against Don (1) upon his (Don's) alleged failure to exercise the *highest* degree of care in turning left on highway 33 to keep his car to the right or north side of highway 69 and to the right of the center thereof until he reached a point beyond the center of highway 33 before turning to the left on highway 33; and (2) upon the alleged failure of Don (in making the left turn) to exercise the *highest* degree of care to keep a lookout for oncoming (eastbound) cars on highway 69. The jury was told that if they found Don failed in the two respects submitted and also found plaintiff, at the time, "was using *reasonable and proper* care for his own safety" (italics ours) then the verdict would be for plaintiff and against Don.

Instruction No. 2 directed that if the jury found that Don "saw or by the exercise of the *highest* degree of care could have seen, at said time and place that the car driven by the plaintiff was coming from the west on said south half of U. S. highway No. 69 and that there was immediate and imminent danger of collision therewith under the facts and circumstances then and there existing, if so, and if you further find and believe from the evidence that the defendant Don Conger knew, or by the exercise of the *highest* degree of care could have known, that if he turned his car upon the south half or left side of U. S. highway No. 69 at or near its intersection with State highway No. 33, . . . "hypothesizing the facts, then to find for plaintiff "if you further find and believe from the evi-

dence that the plaintiff was at all times exercising *due* care for his own safety'' (italics our).

It will be noted that instruction No. 1 placed upon defendant Don Conger the duty to exercise the *highest* degree of care, while plaintiff's duty by the instruction was to exercise *reasonable and proper care* for his own safety. Instruction No. 2 made it Don's duty to exercise the *highest* degree of care and fixed plaintiff's duty at the exercise of *due* care for his own safety. The statute, Sec. 8383 R. S. 1939, Mo. R. S. A., Sec. 8383, required plaintiff, as well as Don, to use the highest degree of care, and it is in effect conceded that plaintiff's instructions 1 and 2 are not in accord with the letter of the statute. But plaintiff argues that when all the instructions are considered together instructions 1 and 2 should not be held to constitute reversible error. It is the rule, of course, that instructions must be read and construed together as a whole as stating the law for the guidance of, the jury. They must not be conflicting, but may be supplementary to or explanatory of each other. Mueller v. Schien, 352 Mo. 180, 176 S. W. (2d) 449; Scott et al. v. First Nat. Bank, 343 Mo. 77, 119 S. W. (2d) 929.

Plaintiff's instruction No. 3 told the jury that by the term *highest degree of care,* as used in *these* instructions ''is meant that degree of care and caution that a very careful and prudent person would exercise under the same or similar circumstances'', but there was no definition of the terms *reasonable care, proper care, due care,* in plaintiff's instructions 1 and 2. In defendant Don Conger's instruction D, on the alleged contributory negligence of plaintiff; the jury was told that ''as to the claim of plaintiff Hamre against Don Conger that the law required plaintiff Hamre to exercise the *highest* degree of care . . . '' (italics ours). In Don's instruction D submitting alleged contributory negligence of plaintiff and in [246] defendants' instruction E, submitting their respective counterclaims under the humanitarian rule, the *highest* degree of care on the part of plaintiff was required.

To support the contention that when the instructions are construed as a whole plaintiff's instructions 1 and 2 do not constitute reversible error, plaintiff cites: Engleman v. Railway Express Agency, Inc., 340 Mo. 360, 100 S. W. (2d) 540; Perkins v. Terminal R. Assn. of St. Louis, 340 Mo. 868, 102 S. W. (2d) 915; Cornovski et ux. v. St. Louis Transit Company, 207 Mo. 263, 106 S. W. 51; King v. Friederich (Mo. App.), 43 S. W. (2d) 840; Conroy v. St. Joseph Ry., Light, Heat & Power Co., 345 Mo. 592, 134 S. W. (2d) 93; Smith v. Gately Stores, Inc. et al. (Mo. App.), 24 S. W. (2d) 200; Deitderick v. Missouri Iron & Metal Co., 222 Mo. App. 740, 9 S. W. (2d) 824; Mueller v. Schien, 352 Mo. 180, 176 S. W. (2d) 449.

It will not be necessary to review these cases. Neither is applicable to the situation here. Plaintiff's instructions 1 and 2 told the

jury that as to any claim of negligence against him in his case against Don Conger that he, plaintiff, was required, as to the operation of the truck, to use only *reasonable care, proper care,* and *due care.* The terms *reasonable care, proper care,* and *ordinary care* are synonymous. State ex rel. Grear v. Ellison et al. (Mo. Sup.), 182 S. W. 961, l. c. 963, and cases there cited. See also Cornovski et ux. v. St. Louis Transit Co., supra; Wilson v. Chattin, 335 Mo. 375, 72 S. W. (2d) 1001, l. c. 1002. The term *due care* means *ordinary care.* Wilson case [72 S. W. (2d) l. c. 1002]. Therefore, it appears that the degree of care that plaintiff prescribed for himself in his instructions 1 and 2 was ordinary care, while the highest degree of care by these instructions was required of defendant Don Conger. It is true that in Don's instruction D (contributory negligence) and in defendants' instruction E on the counterclaims the jury was told that plaintiff was required to use the highest degree of care, but such was contrary to what plaintiff's instructions 1 and 2 required of him.

In Chamberlain v. Hamilton et al. (Mo. App.), 93 S. W. (2d) 1014, the plaintiff's instructions 1 and 3 directed as an abstract proposition that it is the duty of the driver of an automobile upon a public highway to exercise the highest degree of care. Plaintiff's instruction No. 4, which covered the whole case and directed a verdict, after hypothesizing the facts to be found, advised the jury that if it found such facts and further found that at the time and place of the collision the plaintiff was operating his truck "in a careful and prudent manner", then the verdict would be for the plaintiff. Instruction No. 4 was held to constitute reversible error.

Wilson v. Chattin, supra, was for damages for personal injuries resulting from an automobile collision. Among the instructions given for the defendant was instruction E as follows: "The court instructs the jury that if you find and believe from the evidence that the defendant, Thompson Chattin, did not see the plaintiff prior to the injury, and, by the exercise of *due care* on his part could not have seen him in time, by the exercise of *due care,* to have avoided the accident, then your verdict must be for the defendant" (italics ours). It was held, as appears supra, that due care means ordinary care, and that instruction E was prejudicial. The court said: "This requirement of the exercise of only ordinary care (due care) on the part of defendant to see plaintiff and avoid injuring him is at distinct variance with plaintiff's given instructions wherein one of the grounds of negligence submitted was that 'said defendant negligently drove said motor vehicle at said time without keeping any watch or lookout for persons upon said highway and crossing the same, including the plaintiff,' and wherein the word 'negligently' as used in that instruction was defined as meaning 'the failure to exercise the highest degree of care' or 'such care as would ordinarily be used

by a very careful and prudent person under like or similar circumstances.' ''

Stewart v. Jeffries, 224 Mo. App. 1050, 34 S. W. (2d) 560, was for damages for personal injuries resulting from defendant's truck striking plaintiff's automobile. Plaintiff's instructions told the jury that it was the duty of the defendant to exercise the highest degree of care in operating the truck, and that the failure to exercise such [247] care was negligence. Among the defenses was contributory negligence. The first paragraph of plaintiff's instruction No. 2 was as follows: ''The court instructs the jury, that if you shall find and believe from the evidence that the plaintiff, when he stoppd his automobile on the highway, placed the same with the right side thereof as near the right side of the highway as was practicable, and otherwise exercised *ordinary care* then you cannot find plaintiff guilty of contributory negligence'' (italics ours). Plaintiff got a verdict. The court said: ''Since the instructions required (requested) by plaintiff and given by the court told the jury that a different degree of care applied to the defendant to that applied to the plaintiff, the case will have to go back for another trial.''

In the present case plaintiff's instructions 1 and 2 prescribed a different degree of care than prescribed for defendant Don Conger and such was in conflict with Don's instruction on contributory negligence and in conflict with defendant's instruction on the counterclaims. We think that plaintiff's instructions 1 and 2 in the respect mentioned constituted prejudicial error, and that the trial court ruled correctly in sustaining the motions for a new trial.

Defendants say that the motions should have been sustained on other assigned grounds therein than on instructions 1 and 2. The other grounds are on plaintiff's instruction No. 4 and on the admission of evidence. In view of another trial we should rule these assignments Instruction No. 4 was on the credibility of witnesses and contained the following: ''. . . if you believe that any witness has wilfully sworn falsely regarding some material fact about which such witness gave testimony, you are at liberty to disregard and disbelieve that part of such witness' testimony, or the whole of such witness' testimony.'' Defendants say that there was no occasion for instructing on the subject of wilfull false swearing and that the instruction on that subject is too broad. The cases of State v. Willard, 346 Mo. 773, 142 S. W. (2d) 1046, and Farmers' State Bank v. Miller, (Mo. App.), 26 S. W. (2d) 863, are cited. In the Willard case the court said [142 S. W. (2d) l. c. 1053]: ''We agree substantially with the annotator in 90 A. L. R. l. c. 81, and think a court has gone far enough when it instructs the jury that if they believe a witness has wilfully sworn falsely on a material issue, they should consider that fact in determining the credibility of the rest of his testimony.'' It is also stated in the Willard case [142 S. W. (2d)

l. c. 1053] that the giving of an instruction on credibility of witnesses rests largely in the sound discretion of the trial court. See also State v. Caviness, 326 Mo 992, 33 S. W. (2d) 940, l. c. 943; State v. Williams, 309 Mo. 155, 274 S. W. 427, l. c. 436. There is nothing here to justify a ruling that the trial court abused its discretion in giving instruction No. 4. However, if there is another trial, and an instruction on credibility of witnesses is given, the court will observe what is said in the Willard case first above quoted.

■ Were defendants prejudiced by the admission of evidence? David E. Harrison, a member of the highway patrol, was a witness for plaintiff. He testified as to the *location* of the debris (dirt, glass, etc.) that fell from the two cars upon the impact. When the two cars came to rest after the impact they were some 5 or 6 feet apart. Witness Harrison testified: "The point of impact is at the center of the debris and that is where we come to the conclusion that that is the point of impact, and that is what we put on our report." Then the record shows: "Mr. Popham: We ask that be stricken as a mere conclusion and not binding on the defendants. The Court: He said that is just his conclusion; overruled. You adjudged it because that is where you found the main debris? A. That is right, sir."

The point of impact was an important fact of the whole case, both on plaintiff's case and on the counterclaims. There was no preliminary inquiry to determine Patrolman Harrison's experience to qualify him as an expert to determine the *point* of impact from the *location* of the debris. In support of the conclusion evidence of Patrolman Harrison, plaintiff cites only one case, Adams v. Carlo et al., (Mo. App.), 84 S. [248] W. (2d) 682. In that case a witness was asked if any warning was given of a boom moving around, and answered that there was not. Objection was made on the ground that the answer was a mere conclusion. In holding that the evidence was competent, the court said [84 S. W. (2d) l. c. 684]: "Where a conclusion or inference, whether it be positive or negative, is so usual or instinctive in its nature as to accord with the experience of people generally, then the statement of such a conclusion or inference by a witness is to be received in evidence as substantially one of fact, and not as a conclusion. Every one knows what is meant when one says that no warning of an impending act was given, and therefore what the testimony in question actually resolved itself into was the denial or refutation on the part of the witness of something presumably positive, which if it had occurred, the witness, by reason of his position, would reasonbly have been expected to have known about."

But the Adams case so-called conclusion evidence is quite unlike the present conclusion evidence. In the brief plaintiff says: "This court will probably take judicial notice of the fact that where two moving vehicles come together the debris and glass will be located. That is a known physical fact which Harrison in his capacity as

investigating officer knew and noted. It did not constitute an improper conclusion, but a statement of fact and at most an opinion which he was qualified to state." As stated, the point of impact was an important fact for determination, perhaps the most important fact. "As a general rule, a witness must state facts, from which the jurors are to form their opinion. But when the facts are all stated, upon a subject of inquiry, if an intelligent opinion cannot be drawn therefrom by inexperienced persons, such as constitute the ordinary jury, an exception is made to the general rule and persons who, by experience, observation, or knowledge, are peculiarly qualified to draw conclusions from such facts, are, for the purpose of aiding the jury, permitted to give their opinion. The exception is allowed from necessity. An expert witness, in a manner, discharges the functions of a juror; and his evidence should never be admitted unless it is clear that the jurors themselves are not capable, from want of experience or knowledge of the subject, to draw correct conclusions from the facts proved." Stephens v. Kansas City Gas Co., 354 Mo. 835, 191 S. W. (2d) 601, l. c. 606. It will be noted that plaintiff in the brief says that it (that the center of the debris is the point of impact) is a known physical fact which Patrolman Harrison knew and noted. If such is so generally known as plaintiff claims, then there was no occasion for opinion or expert evidence.

"Expert testimony is the opinion of a witness possessing peculiar knowledge, wisdom, skill, or information regarding a subject matter under consideration, acquired by study, investigation, observation, practice, or experience, and not likely to be possessed by the ordinary laymen or an inexperienced person, and consequently who is incapable of understanding the subject under consideration, without aid of the opinion of some person who possesses such knowledge, wisdom, skill, practice, or experience; and a person who is competent to give expert testimony is denominated as 'expert witness.' " Baker v. Kansas City Public Service Co., 353 Mo. 625, 183 S. W. (2d) 873, l. c. 875. That the *center* of the *debris* falling from two motor vehicles upon impact may not be substantial evidence of the *point* of impact is, we think, in effect, ruled in Schoen v. Plaza Express Co. et al., (Mo. Sup.), 206 S. W. (2d) 536, l. c. 539. There, as here, the collision of two motor vehicles was involved and the point of impact was in issue, and the location of the debris was a circumstance for consideration in determining the point of impact. In the Schoen case the court said: "Regardless of the position of defendants' vehicle with reference to the east side of the highway when the collision occurred, it would be reasonable to suppose the loosened parts and fragments of the damaged vehicles would be cast to the westward; yet, it could not be stated with reasonable certainty that this would be so in every such situation. The vehicles being of different weight and size; traveling, no doubt, at different speed; and colliding with great

force and [249] at an unknown angle—it would be impossible to reason out or mathematically determine just where the broken-off parts would be cast.''

Whatever value the *location* of the debris or the *center* of the debris falling from two motor vehicles upon impact may have upon determining the point of impact is not, in our opinion, a proper subject for expert or opinion evidence. In this age of motor vehicles, knowledge upon such subject is not something not possessed by the ordinary person, hence the opinion evidence of Patrolman Harrison was incompetent, since it invaded the province of the jury.

The order and judgment of the trial court in granting the new trial should be affirmed. It is so ordered. *Dalton* and *Van Osdol, CC.*, concur.

PER CURIAM:—The foregoing opinion by BRADLEY, C., is adopted as the opinion of the court. All the judges concur except *Clark, J.*, not sitting.