State v. Hathhorn.

---

## THE STATE v. HATHHORN, Appellant.

### Division Two, December 17, 1901.

1. **Criminal Law: FORGERY: DEED: POSSESSION: INDICTMENT.** Under Revised Statutes 1899, section 2012, declaring any person having possession, with knowledge, and intent to defraud by uttering, of any forged instrument, except such as are enumerated in section 2001, guilty of forgery, an indictment for so having an instrument, the description of which clearly shows that it does not belong to the class described in section 2001, need not note such exception.

2. ———: ———: ———: ———: **GUILTY INTENT.** Under Revised Statutes 1899, section 2012, an actual uttering is not necessary to constitute the offense, but possession of the forged instrument, with knowledge and guilty intent to utter, is sufficient.

3. ———: ———: ———: ———: **EVIDENCE: STATEMENTS OF DEFENDANT.** In a prosecution under Revised Statutes 1899, section 2012, for having possession of a forged deed with knowledge and intent

to defraud by uttering the same, it is error to admit testimony that defendant had stated that the deed was genuine, and that the land belonged to his wife, the grantee in such deed, or that in repeated conversations between witness, defendant, and the grantor as to the latter's property, no mention was made of the deed.

4. ————: ————: ————: ————: ————: INCOMPETENT: GENERAL OBJECTION. Where evidence is incompetent for any purpose whatever, a general objection suffices.

5. ————: ————: ————: ————: EVIDENCE: CROSS-EXAMINATION OF DEFENDANT. Under Revised Statutes 1899, section 2637, providing that, when a defendant on trial in a criminal cause shall testify, he may be cross-examined as to any matter referred to in his examination in chief, it was error to permit defendant, who was on trial for having in possession a deed alleged to be forged, and purporting to be acknowledged before him, to be asked on cross-examination whether the grantor in such deed had ever acknowledged any other deed before him, when he had not testified in chief on that subject. (Overruling State v. Brooks, 92 Mo. 542.)

6. ————: ————: ————: ————: INSTRUCTION: INTEREST. Where defendant was on trial, charged with having possession of a forged deed in which his wife was grantee, it was error to refuse his request to charge that he had no interest in the land described in the deed.

7. ————: ————: ————: ————: ————: UNEXPLAINED POSSESSION: KNOWLEDGE. Where defendant was on trial, charged with having possession of a forged deed with intent to defraud by uttering it, it was error to charge that, if the deed was found to be a forgery, the unexplained possession was evidence to be considered as tending to prove his possession was with knowledge of its false character, and for an unlawful purpose.

8. ————: ————: ————: INDICTMENT: ALTERATION: MOTION TO QUASH: QUESTION FOR COURT. Where a typewritten indictment shows an alteration in the date of the offense charged, by writing one figure over another, and it is claimed on a motion to quash that the change was made after the indictment was filed, and evidence is introduced in support of such claim, the question must be determined by the court, and not by the jury.

9. ————: ————: ————: ————: ————: ————: NEW TRIAL. Where a motion to quash an indictment on the ground that an alteration appearing on its face was made after it was filed, the decision of the court that the alteration was made before filing does not preclude an investigation of the same facts on a new trial.

State v. Hathhorn.

Appeal from Cole Circuit Court.—*Hon. T. B. Robinson,* Judge.

REVERSED AND REMANDED.

*Edwards & Edwards* for appellant.

(1)   The indictment is bad for the reason that it does not negative the exceptions contained in the section of the statute under which it was drawn.    This indictment was drawn when the statute of 1889 was in force and is drawn under either section 3644, section 3645 or 3646, which correspond at this time to sections 2012, 2013, 2014, each of which contains an exception and the indictment does not negative such exception. If it was drawn under section 3644, the indictment is bad, for the words "or caused to be uttered" are not contained in the indictment; or, of the indictment is good without those words, then instruction 1 for the State is bad under the indictment, because those words are not contained in the indictment and should not have been used in the instruction.    State v. Meek, 70 Mo. 357; State v. O'Brien, 74 Mo. 549; State v. Bockstruck, 136 Mo. 335; State v. Hesseltine, 130 Mo. 468.    (2) Instruction 1, for the State, is bad because, if the indictment is bottomed on section 2012, it uses language contained in that section, to-wit, "or caused the same to be uttered as true," and these words are not contained in the indictment, and again, because it tells the jury in the last part of the first paragraph that if defendant had possession of the alleged forged instrument "with the intent of using the same or causing it to be used as a true act and deed," etc., and no such language is used in the indictment, nor in any section of the statute, and because it leaves out the word "feloniously" without which no offense could be committed under the indictment.    State v. Samuels, 144 Mo. 68; State v. Horner, 48 Mo. 520: State v. McLain, 60 S. W. 736; State v. Cunningham, 154 Mo. 178.

(3)  The indictment as originally drawn showed that W. S. Freshour was alleged to be the owner and in the possession of the land on July 13, 1898.  Whereas, the indictment now shows that it was on July 13, 1897.  Freshour died July 2, 1897, and, hence, had been dead a year or more at the time the allegation of ownership and possession was alleged to be in him.  An alteration of a note, even where the change is made for the benefit of the maker, has been held time and again by this court to make void the note.  Haskell v. Champion, 30 Mo. 136; Bank v. Fricke, 75 Mo. 178; Morrison v. Garth, 78 Mo. 434.  Much more strict is the rule where a change is made in a paper like the one we are now considering. State v. Patterson, 59 S. W. 1104.  All through the examination of defendant by the State, matters were brought out, not in any manner referred to by defendant's counsel, and over their objections he was forced to answer them.  The statute pronounces against such cross-examination, and this court has upheld the statute from its earliest decisions under the statutes.  State v. Grant, 152 Mo. 57.

*Edward C. Crow,* Attorney-General for the State; *Perry S. Rader,* special counsel.

(1)  It was not necessary to negative the exceptions stated in the statute.  Where an affirmative offense will appear without reference to the exception, or where a distinct crime may be charged without recounting such exception, or where the exception is not descriptive of the offense, or where the exception is contained in another section of the statute, the exception need not be negatived in the indictment.  State v. Bockstruck, 136 Mo. 351; State v. O'Gorman, 68 Mo. 189; State v. Jaques, 68 Mo. 261; State v. Shiflett, 20 Mo. 417; State v. Cox, 32 Mo. 566; State v. Sutton, 24 Mo. 377; State v. Meek, 70 Mo. 357; State v. O'Brien, 74 Mo. 549.  (2)  If the evidence showed that defendant had the deed in his posses-

sion, etc., at any time within three years of the finding of the indictment, at the November term, 1898, the law permitted his conviction, whether the indictment charged that he had the deed in his possession eleven days (July 13, 1897) or one year and eleven days (July 13, 1898) after Freshour's death.   R. S. 1889, sec. 3999; State v. Crawford, 99 Mo. 74; State v. McDaniel, 94 Mo. 301; State v. Burnett, 81 Mo. 119; State v. Eaton, 75 Mo. 595.   In view of this statute and these rulings of this court, it was immaterial whether the indictment was changed after it was filed or not.   The change, even admitting it was made, was to lay the crime as having been committed in July, 1897.   The indictment was good in either case.   (3) The use in the first instruction given of the words "with intent to injure or defraud by uttering the same as true or causing the same to be uttered as the true act of William S. Freshour," did not enlarge the issues made by the indictment, and was not error.   State v. Rucker, 93 Mo. 88; State v. Fredericks, 85 Mo. 150; State v. Johnson, 111 Mo. 584; State v. Payton, 90 Mo. 220; State v. Anderson, 89 Mo. 312; State v. Scuchmann, 133 Mo. 111; Langdon v. People, 133 Ill. 382. (4)   There was a sufficiency of evidence to support the intent; that is, the charge that the defendant then and there had said writing and deed in his possession, well knowing the same to be forged, counterfeited and falsely made "with the intent then and there and thereby of unlawfully and feloniously uttering and passing the same as true."   Paige v. People, 3 Abb. App. Dec. (N. Y.) 447; Com. v. Whitney, Thacher's Crim. Cas. (Mass.) 590; State v. Horner, 48 Mo. 522; Com. v. Searle, 2 Binn (Pa.) 338; People v. Caton, 25 Mich. 392; People v. Bigham, 2 Mich. 550; Charhoon v. Com., 20 Gratt. (Va.) 733; Smith v. State, 20 Neb. 284.

SHERWOOD, P. J.—The prosecution in this cause was bottomed on section 3644, Revised Statutes 1889, now section 2012, Revised Statutes 1899, which reads in this way:

"Every person who shall have in his possession, buy or receive any falsely made, altered, forged or counterfeit instrument or writing, the forgery of which is hereinbefore declared to be an offense, except such as are enumerated in section 3633, knowing the same to be forged, counterfeited or falsely made or altered, with intent to injure or defraud, by uttering the same as true or false, or causing the same to be so uttered, shall upon conviction be adjudged guilty of forgery in the fourth degree."

The indictment, omitting the deed, acknowledgment, etc., is the following: "The grand jurors of the State of Missouri, within and for the county of Cole, now here in court, duly impaneled, sworn and charged, upon their oath, present that David L. Hathhorn, on or about the thirteenth day of July, 1897, at the county of Cole aforesaid, knowingly, unlawfully and feloniously, had in his custody and possession a certain false, counterfeited and forged instrument of writing and printing purporting to be a deed of conveyance of real estate situate in Cole county, Missouri, and described as the northwest quarter of section thirty-six (36) and the west half of the northeast quarter section thirty-six (36), township forty-five (45), range fourteen (14); also the south part of the southwest quarter of the southeast quarter section twenty-five (25) and the south part of the southeast quarter of the southwest quarter section twenty-five (25); also a piece of land in the southeast corner of the southwest quarter of the southwest quarter section twenty-five (25), beginning at the southwest corner of D. L. Hathhorn land and then running due south until it intersects the section line between section (25) and (36), all in township forty-five (45), range fourteen (14), containing in all about three hundred and five acres, from Wm. S. Freshour to Myra Jane Hathhorn, and purporting to be made by the said Wm. S. Freshour, and to be his act and deed, and which said forged and counterfeit written and printed instrument, to-wit, a deed from the said Wm. S. Freshour to the

said Myra Jane Hathhorn for the land aforesaid, was then and there in words and figures, writing and printing, as follows, to-wit: . . . . And which said deed and instrument of writing so purporting to be the act and deed of the said Wm. S. Freshour purported and pretended to convey the land aforesaid to the said Myra Jane Hathhorn he, the said Wm. S. Freshour, being then and there the owner of and in possession of and having an interest in the real estate and lands aforesaid, and by which said false and forged instrument and deed so as aforesaid, made, counterfeited and forged, the said real estate purported to be transferred from the said Wm. S. Freshour to the said Myra Jane Hathhorn, and the title to the said land to be thereby affected transferred and conveyed as in said deed specified and set out. And the said David L. Hathhorn did then and there, on the day and year aforesaid, at the county and State aforesaid, unlawfully, knowingly and feloniously have the said falsely made, altered, forged and counterfeited instrument of writing and deed hereinbefore set out and described, in his possession then and there well knowing the same to be forged, counterfeited and falsely made, with the intent, then and there, and thereby, to unlawfully and feloniously injure and defraud by then and there unlawfully and feloniously uttering and passing the same as true, against the peace and dignity of the State."

The original indictment, now before us, plainly shows the figure 7 superimposed upon the figure 8 in the date mentioned in the above indictment. Whether this change occurred in the last figure in the date, prior to the time the indictment was presented by the grand jury, and filed by the clerk, or subsequently thereto, is one of the contentions in this case, which will be adverted to later on.

The indictment, aside from the alleged alteration, is well enough; no objection to it is discovered. And with respect to the indictment not noting the exceptions contained in section 2001, this noting was unnecessary, because an examina-

tion of that section in connection with the indictment, clearly shows that the instrument mentioned therein, is not one of those specified in said section and, therefore, necessarily excepted out of section 2012.

As to the evidence, it is needless to incumber this opinion with it, as it will, in substance and effect, accompany the report of this cause. That evidence, however, adverting to it now but for a moment, seems to preponderate in favor of the view that the indictment was altered, after filing, in the respect heretofore noted, and the evidence seems to preponderate in favor of the view, also, that the deed purporting to be from Wm. S. Freshour to Myra Jane Hathhorn, was forged. And if that deed was forged by defendant, or if it was forged by some one else and delivered to and retained by him, in his possession for several months prior to Freshour's death, which fact of mere retention is shown by defendant's own testimony; and such retention was done or had by defendant with knowledge of the forgery, then the question of the intent on defendant's part "to injure or defraud" etc., would seem to be set at rest. Because the forging of the deed and subsequent retention of it, or subsequent retention of it with knowledge that it was forged, is altogether inconsistent with any honest purpose. Under the quoted section, it is not necessary that there should be any actual uttering. The having the possession of a forged instrument in the circumstances above stated, and with the intent aforesaid, causes the statute to be violated, and its penalty to fall on the party guilty of such violation.

The punishment for forgery in the fourth degree, is imprisonment in the penitentiary, not exceeding five years, or imprisonment in the county jail for not less than six months. The jury inflicted the latter, the lightest and lowest punishment in this case.

But it would seem from the evidence adduced, that if forgery of the deed occurred, in either of the ways heretofore mentioned, then the act of uttering such forged instrument

was complete; and if so, such act could have been punished under the provisions of section 3646, Revised Statutes 1889 (now section 2014, Revised Statutes 1899), which section is as follows:

"Every person who, with intent to defraud, shall pass, utter or publish, or offer or attempt to pass, utter or publish as true, any forged, counterfeited or falsely altered instrument or writing, or any counterfeit or any imitation of any gold or silver coin, the altering, forging or counterfeiting of which is hereinbefore declared to be an offense, knowing such instrument, writing or coin to be altered, forged or counterfeited, shall, upon conviction, be adjudged guilty of forgery in the same degree as hereinbefore declared for the forging, altering or counterfeiting the instrument, writing or coin so passed, uttered or published, or offered or attempted to be passed, uttered or published."

Whether a party accused, prosecuted and shown to be guilty under section 2012, and also guilty under section 2014, by reason of uttering, could be punished, also, under the latter section, or whether the former offense would be merged in the latter, is a point not raised in the lower court, nor in this court, and is therefore presented in the form of a query, and not as an adjudication.

Error occurred in admitting as evidence, and in evidence, testimony of Judge Sommers, the probate judge of Cole county, in regard to the mutual altercations between Letts and defendant in the probate office, as to whether the deed to Mrs. Hathhorn was a forgery, as affirmed by Letts, or whether genuine, as affirmed by defendant. Such testimony of Judge Sommers was indubitably hearsay, since it was simply but a sworn statement of an unsworn statement. [Whart. Crim. Evid. (9 Ed.), sec. 223; 1 Whart. Evid. (3 Ed.), secs. 172, 173; 1 Glf. Evid. (14 Ed.), sec. 98; State v. Huff, 161 Mo. loc. cit. 488, 489.]

And when evidence is incompetent for any purpose, what-

.ever, a general objection suffices.   [State v. Meyers, 99 Mo.
107, and many subseq. cas.]

Under the same head of hearsay may be placed the testi-
mony of Moritz Schreiber, in relation to what defendant said
about the rent of the land mentioned in the litigated deed be-
longing to his wife.   And in the same category may be classed
the notice which Schreiber states defendant caused the consta-
ble to serve on Schreiber, which was a notice to the latter to
quit possession of the land in dispute, and was given in the
name of Mrs. Hathhorn through her attorneys. Nor could the
fact that defendant asserted that the land was his wife's, be
made to operate retroactively, and thus show that prior to that
time, he had the deed in his possession with a fraudulent intent;
since the doctrine of relation does not apply in criminal prose-
cutions.

To the same classification belongs the testimony of Letts
about Freshour, during his last sickness (which lasted it seems
some seven months), having a new trunk bought in St. Louis
by defendant, and his (Freshour's) valuable papers trans-
ferred from the old trunk to the new, notes, deeds of trust,
certificates of deposit, etc.; sorting them out, and stating to
Letts the defendant that the papers in the new trunk were all
the papers that they, as executors, would need in adminis-
tering the estate.   And that nothing was said during these
conversations, by either Judge Freshour or defendant about
the disputed deed being in existence, or about any papers being
anywhere else, only those in the new trunk; and that these
conversations between Judge Freshour, Letts and defendant,
continued in relation to said estate matters, down to within
about a month of the time when Judge Freshour died, which
occurred July 2, 1897.

Error also occurred in permitting defendant to be cross-
examined as to matters not testified to by him in his examina-
tion in chief.   Thus, it was permitted the State to cross-
examine defendant as to whether he had, prior to the time he

took Judge Freshour's acknowledgment to the deed to Mrs. Hathhorn, ever taken the acknowledgment of Judge Freshour to a deed to land of any kind.  No testimony on that point had been elicited from defendant.

And for the like reason, defendant should not have been cross-examined as to whether defendant had ever before that time taken the acknowledgment of a deed of Judge Freshour's to which his wife, Mrs. Freshour, was not a party.

Under the provisions of the Act of 1877, a defendant who took the stand as a witness, could be cross-examined as any other witness.  [State v. Clinton, 67 Mo. 380; State v. Cox, 67 Mo. 392; State v. Rugan, 68 Mo. 214; State v. Testerman, 68 Mo. 408.]  But since those rulings were made the Legislature, by section 1918 (Revised Statutes 1879) now sections 2637, 2638, Revised Statutes 1899, so amended the law as to confine the cross-examination of a defendant witness, "as to any matter referred to in his examination in chief."  This amendatory clause has been frequently ruled upon by this court, and when its behests have been disobeyed, a reversal of the judgment has been the invariable result.  [State v. McGraw, 74 Mo. 573; State v. Turner, 76 Mo. 350; State v. McLaughlin, 76 Mo. 320; State v. Porter, 75 Mo. 171; State v. Douglass, 81 Mo. 231; State v. Patterson, 88 Mo. 88; State v. Chamberlain, 89 Mo. 129; State v. Graves, 95 Mo. loc. cit. 516; State v. Hudspeth, 150 Mo. loc. cit. 31.]

In State v. Brooks, 92 Mo. 542, this statute on the point mentioned, was disobeyed; but the ruling in that case, is not in accord with the other cases cited, and should no longer be followed.

Attention will now be directed to the instructions, of which, speaking generally, those for the State are in usual form; but an instruction was refused defendant, and of this refusal it is proper to speak, as no instruction, embodying the same theory, was given on the side of the State.  The refused

instruction related, in effect, to the absence of motive of defendant to do the crime with which he was charged.

There is no doubt that motive prompting to the commission of a crime is admissible in evidence, on behalf of the State in order to warrant a conviction; and want of motive is equally available on the part of the accused to countervail the idea of the guilt of the prisoner; but though no motive be established by the State, still a conviction may follow, if the offense be otherwise made out. [1 McLain Crim. Law, sec. 416; State v. David, 131 Mo. 380; State v. Foley, 144 Mo. 600.] This being the case, it was entirely competent for defendant to ask the following instruction:

"10.   The jury are instructed that this is an indictment against D. L. Hathhorn, and the instrument alleged to have been forged in this case is executed in the name of Myra J. Hathhorn, and there is no evidence before the jury that this defendant had any interest whatever in said land mentioned and described in the indictment or in the deed alleged to have been forged by him, and under the law of this State said defendant could not have and has not any interest in said real estate mentioned in the indictment."

Or if not in all respects thought to be correct, one similar in thought and structure should have been given by the court, as the instruction refused carries the proper idea.   Since the law of 1889 went into effect, a husband has neither right, title nor interest in the real estate of his wife, and interest is the chief mainspring of motive.   The refusal, as above stated, therefore constitutes reversible error, since interest of some sort is the usual mainspring of motive.

An instruction given for the State is the following:

"4.   You are further instructed that if you find from the evidence that the deed in question purporting to have been made by Wm. S. Freshour to Myra Jane Hathhorn, as introduced in evidence, is not in fact the deed of the said William S. Freshour, but a forgery, then the possession of said forged

instrument, if unexplained by the defendant, is evidence to be considered by you as tending to prove that defendant had the same in his possession with knowledge of its false character and for an unlawful purpose."

This instruction requires defendant to *explain away his supposed guilt, thus nullifying his presumptive innocence.* Further comment on such an instruction is unnecessary.

The last point to be touched upon is the alteration of the indictment.   That such change did occur, whether at the moment the indictment was being typewritten, or subsequent thereto, is obvious on the face of the indictment, the original of which is before us.  The preponderance of the evidence, as before stated seems to show the alteration in the indictment occurred after it had become one of the files of the court. If the indictment was altered after it became a record of the court, then on a motion to quash or a suggestion of a similar nature, evidence in support of such motion may be introduced to show such alteration.   [1 Bishop New. Crim. Proc., sec. 763, and cas. cit.]   And when matters are in such posture, then the *court* is to determine the question of alteration *vel non.*   [Com. v. Davis, 11 Gray 4.]   And to submit such question to the jury for their finding, constitutes ground for exception.   [Ibid.]

But a determination by the court that no alteration had occurred would not become final so as to prevent a reinvestigation of the same facts when offered again, in evidence upon the occurrence of a new trial granted.

For the errors aforesaid, judgment reversed and cause remanded.   All concur.