248 S.W.2d 864 (1952)
YOUNG
v.
ANTHONY.
No. 42787.
Supreme Court of Missouri, Division No. 1.
May 12, 1952.
*865 Smith & Williams, Springfield, for appellant.
Joe C. Crain, Ozark, Edward V. Sweeney, Monett, for respondent.
VAN OSDOL, Commissioner.
In this action upon a claim stated in two counts for personal injury and property damage arising out of a collision of the automobiles driven by plaintiff and defendant on State Highway No. 123 about four miles south of Springfield in Greene County, a jury returned a verdict awarding plaintiff $5000 for personal injury, and $147 for property damage to plaintiff's automobile; and the jury found for plaintiff and against defendant on defendant's counterclaim for property damage to defendant's automobile.
The trial court overruled defendant's motion for a new trial as to the first count of plaintiff's petition, but granted a new trial on the sole issue of damages to property as stated in the second count of the petition. Defendant appealed from the judgment entered upon the verdict to the Springfield Court of Appeals. The Court of Appeals by majority opinion affirmed the trial court's judgment, Young v. Anthony, Mo.App., 241 S.W.2d 17, but subsequently transferred the cause to this court because of general interest or importance of a question involved in the case and for the purpose of re-examining existing law. We may finally determine the cause as if it had come to this court on original appeal. Const. Art. V, § 10, V.A.M.S.
Defendant-appellant contends (1) the trial court erred in overruling defendant's motions for a directed verdict. Defendant-appellant asserts that plaintiff was guilty of contributory negligence as a matter of law; and that plaintiff's testimony of the circumstances of the collision was unbelievable, inherently impossible, and wholly insufficient to support the jury's verdict. Defendant-appellant further contends (2) the trial court erred in giving Instructions Nos. 1, 2 and 3 in behalf of plaintiff. Defendant-appellant urges that the instructions are in conflict with instructions given in behalf of defendant, and are in themselves erroneous in submitting plaintiff's duty to exercise only "due care" although the instructions require of defendant the exercise of the "highest degree of care."
Plaintiff's case was submitted to the jury on primary negligence as hypothesized in plaintiff's two principal instructions, as follows,
"Instruction No. 2. The Court instructs the jury that one assignment of negligence relied upon by plaintiff is that the defendant negligently and carelessly failed to exercise the highest degree of care and did, while driving an automobile Southward on Missouri State Highway No. 123, stop said automobile without placing it as near the right hand side of said highway as practicable. Therefore you are instructed that if you find and believe from the greater weight or preponderance of the evidence that * * * defendant was driving an automobile Southward on Missouri State Highway No. 123, and if you find she stopped said automobile and failed when stopping it to place it as near the right hand edge of the highway as practicable, and if you find that such failure * * * was not in the exercise of the highest degree of care, then you are warranted in finding the defendant guilty of negligence, and if you find that as a direct result of such negligence * * * plaintiff's automobile was caused to collide with the automobile driven by defendant, and if you find that as a result of such collision * * * plaintiff was *866 injured and his automobile damaged, then your verdict should be in favor of the plaintiff on both counts of his petition provided you further find he was in the exercise of due care for his own safety." (Our italics.)
"Instruction No. 3. The Court instructs the jury that if you find and believe from the greater weight and preponderance of the evidence that * * * the plaintiff was driving his automobile Southward on Missouri State Highway No. 123 * * * that the defendant was driving an automobile Southward on said highway ahead of plaintiff's automobile, * * * that the defendant suddenly stopped the automobile which she was driving, on the traveled portion of the highway without giving a reasonable warning signal of her intention to do so, and * * * that the defendant's action in so stopping said automobile * * * was not in exercise of the highest degree of care, then you are warranted in finding the defendant guilty of negligence, and if you find that as a direct result of such negligence * * * plaintiff's automobile was caused to collide with the automobile driven by defendant, and if you find that as a result of said collision * * * plaintiff was injured and his automobile damaged, then your verdict should be in favor of the plaintiff on both counts of his petition provided you find that plaintiff was in the exercise of due care for his own safety." (Our italics.)
The trial court by Instruction No. 1 advised the jury as follows,
"The Court instructs the jury that by the term, `highest degree of care,' is meant that degree of care that a very prudent and very careful person would exercise under the same or similar circumstances.
"That by the term, `negligence,' as used in these instructions is meant the failure to use the highest degree of care.
"That by the term `due care,' as used in these instructions is meant the highest degree of care." (Our italics)
At defendant's request the trial court gave Instructions C and D, respectively submitting plaintiff's contributory negligence, and plaintiff's primary negligence as charged in defendant's counterclaim, specifically in failing to exercise the "highest degree of care" in maintaining a lookout, in driving at an excessive rate of speed, and in failing to keep his automobile under proper control.
Of the contention (1) that plaintiff was contributorily negligent as a matter of law.
A little after four o'clock in the afternoon of March 17, 1949, plaintiff, Claude C. Young, was driving his 1936 Plymouth coupe southwardly on State Highway No. 123. He had left Springfield and was going to his home southeast of Nixa in Christian County. In driving southwardly he was following the 1948 Plymouth sedan driven by defendant, Ida P. Anthony. After plaintiff and defendant had moved a distance of four or five miles, the automobiles of plaintiff and defendant came into collision. The front of plaintiff's coupe collided with the rear end of defendant's sedan.
State Highway No. 123 south of Springfield is a two-lane asphalt highway, the paved portion being about twenty-one feet in width. At the point where the collision occurred, the "shoulder" west of the pavement is three or four feet wide. There is a ditch about twelve feet deep just west of the west shoulder. The surrounding terrain is somewhat rolling. At the time the vehicles collided it was (or had been) raining and the pavement was wet.
Plaintiff testified that, as he was driving his automobile and following defendant's car, both vehicles were moving thirty-five to forty miles per hour. The rear end of defendant's vehicle was covered with mud. Plaintiff maintained a distance of one hundred to one hundred twenty-five feet from the rear of defendant's automobilehe at all times had defendant's vehicle in plain view. The distance did not "vary materially" at any time as the two vehicles were driven along the highway, until just before the collision when defendant made a sudden stop to pick up a young school girl, Maxine Treacle, who was walking southwardly on the east shoulder of the *867 highway. The plaintiff testified that, in the conditions there existing, he could have brought his automobile to a stop within seventy to eighty feet, but his automobile had moved forward lessening the distance between the vehicles to "maybe fifty or sixty feet" before he realized defendant was stopping. He first applied his brakes and started to swerve to his left, but his car "whipped" on the wet pavement and the young school girl, Maxine, ran westwardly across the highway toward defendant's car, so that he (plaintiff) was obliged to swerve to his right striking the rear end of defendant's vehicle. Defendant's automobile was stopped with its left side two or three feet west of the center line of the pavement. "She stopped right where she was running right straight down the road. * * * if she had pulled off and given me the right half of that pavement, or most of it, I would have had plenty time to have gone between her and the little girl that was coming across the road." Defendant gave no signal or warning of her intention to stop.
Defendant testified it was raining and she thought "I will pick Maxine up * * *. And I started rolling down my window, put my hand out halfway between my elbow and wrist * * * took my foot off the accelerator, and after a short distance I put my foot on the clutch, left foot on the clutch, right foot on the brake. In the meantime going off the pavement onto the (west) shoulder as far as I could get off safely. I would say half of my car was on the pavement and half on the shoulder." By deposition, defendant had stated she took her foot off the accelerator and traveled not over twenty-five feet; she then applied her brakes and came to a stop in about ten feet. Defendant testified that as she had come from Springfield, she had been traveling forty to forty-five miles per hour.
We are of the opinion that plaintiff should not be held to have been contributorily negligent as a matter of law. In reaching this conclusion we have considered the evidence, which we have stated supra, from a standpoint favorable to plaintiff. We have disregarded the testimony of defendant that she had signaled her intention to stop her automobile, and we have accepted plaintiff's testimony that defendant suddenly and without warning slackened speed and stopped her automobile on the right (west) side of the pavement. We have also disregarded the defendant's evidence and accepted plaintiff's evidence as to the rate of speed the vehicles were moving.
Defendant-appellant has cited cases including Frandeka v. St. Louis Public Service Co., 361 Mo. 245, 234 S.W.2d 540; and Branscum v. Glaser, Mo.Sup., 234 S.W.2d 626, 627, wherein this court was considering questions of contributory negligence in failing to look, and in which cases it was said that, "where one is charged with the duty to look and to look is to see, he must be held to have seen what looking would have revealed." The facts of these cases are not similar to those of the instant case. For example, in the Frandeka case, had the driver of the fire chief's car looked care fully he could have plainly seen the defendant's bus moving out into the center of Market Street. On the issue of contributory negligence the facts of our case are more like those of the case of Woods v. Chinn, Mo.App., 224 S.W.2d 583. As stated, plaintiff testified that during the time the vehicles were moving one hundred to one hundred twenty-five feet apart he at all times had defendant's vehicle in plain view. Defendant-appellant argues that this testimony "together with his (plaintiff's) admissions that he could have stopped his automobile within a distance of seventy to eighty feet under the conditions existing," makes the plaintiff's own testimony unbelievable and diametrically opposed to and destructive of plaintiff's position that in the circumstances he was not negligent in failing to see and realize defendant was stopping in time for plaintiff to have avoided the collision. In this connection, defendant-appellant mentions the red taillight signals on defendant's car which it was said are automatically displayed upon the application of the brake. Now it seems clear to us that, after defendant suddenly slackened the speed of her vehicle, plaintiff's automobile would have traveled some distance before plaintiff in the exercise of the highest degree of care could have seen *868 and realized that defendant was stopping her car, and we bear in mind that defendant had testified that she only pressed down upon the foot brake as the car was moving a distance of ten feet, so that the red lights on the rear of her car could have been displayed upon the application of the foot brake but momentarily before she came to a stop; and, as we have noticed, the rear end of defendant's car was covered with mud which, it could be reasonably inferred, to some extent obscured the rear lights when defendant was applying the brake.
We believe it should not be held as a matter of law that plaintiff was negligent in driving his automobile at a speed of thirty-five or forty miles per hour and at a distance of one hundred to one hundred twenty-five feet from defendant's vehicle while both vehicles were moving at approximately the same rate of speed in the same direction, especially when there were no circumstances shown in evidence which plaintiff, in the exercise of the highest degree of care, could have observed and which could be said to indicate to plaintiff or to put upon plaintiff the duty to anticipate that defendant would suddenly slacken speed and stop her vehicle on the pavement without any warning. Moreover, according to plaintiff's testimony, even in the circumstances of defendant's conduct in suddenly stopping her automobile upon the pavement, yet plaintiff could have nevertheless passed to the left of defendant's vehicle had it not been for the circumstance of the young girl's movement westwardly across the highway, which latter circumstance, according to plaintiff's evidence, was almost coincident with defendant's conduct in stopping her vehicle on the paved portion of the highway.
Of the contention (2) of error in giving plaintiff's Instructions Nos. 1, 2 and 3.
It will be noted that plaintiff's Instructions Nos. 2 and 3 placed upon defendant the duty to exercise the "highest degree of care," and that plaintiff's duty by these instructions was to exercise "due care." It will also be noted that plaintiff's Instruction No. 1 advised the jury that "by the term `due care,' as used in these instructions is meant the highest degree of care." Considered apart from Instruction No. 1, the Instructions Nos. 2 and 3 were prejudicially erroneous. Hamre v. Conger, 357 Mo. 497, 209 S.W.2d 242; Wilson v. Chattin, 335 Mo. 375, 72 S.W.2d 1001; Chamberlain v. Hamilton, Mo.App., 93 S.W.2d 1014; Stewart v. Jeffries, 224 Mo.App. 1050, 34 S.W.2d 560. See also Burlingame v. Landis, 362 Mo. 523, 242 S.W.2d 578, Id., Mo. App., 234 S.W.2d 808; and Woods v. Chinn, supra. These instructions, by the use of the term "highest degree of care" as applied to the hypothesized negligence of defendant and by the use of the term "due care" as applied to the hypothesized negative of contributory negligence of plaintiff, by contrast of language, unduly, erroneously and prejudicially emphasized the duty of defendant in the exercise of care while minimizing the duty of plaintiff. A different and higher standard of care was required of defendant than of plaintiff. The instructions placed upon defendant the duty to exercise the care of a "very careful and prudent person," the highest degree of care, although the duty of plaintiff was to exercise "due care," the equivalent of ordinary care, the care of an ordinarily careful person. And it may be noted that plaintiff's Instructions Nos. 2 and 3, in erroneously placing upon plaintiff the duty to exercise only "due care," were in conflict with defendant's Instructions D and C; and the stated errors in plaintiff's Instructions Nos. 2 and 3 were not cured by defendant's Instructions D and C, which Instructions D and C put upon plaintiff the duty to exercise the "highest degree of care". Hamre v. Conger, supra [357 Mo. 497, 209 S.W.2d 245].
The Instruction No. 1, in advising the jury that the term "due care" as used in the instructions meant the "highest degree of care", was also erroneous in stating the law of the case. Although the instruction (No. 1) advised the jury that "due care" as used in the instructions meant the highest degree of care, actually and in legal significance "due care" does not mean the highest degree of care. The term "due care" has been held to be equivalent to ordinary care. Wilson v. Chattin, supra; Doherty v. St. *869 Louis Butter Co., 339 Mo. 996, 98 S.W.2d 742; Hamre v. Conger, supra. And the use of the term "due care" in an application to the hypothesized negligent conduct of either plaintiff or defendant or of both plaintiff and defendant in the instant case, wherein both the parties were motorists on a public highway, was erroneous. [The language, "but there was no definition of" the terms reasonable care, proper care, due care, in plaintiff's instructions 1 and 2", in Hamre v. Conger, supra, 209 S.W.2d at page 245, may not be correctly construed as being in conflict with this opinion.]
Instruction No. 1 was not correctly supplementary or explanatory of Instructions Nos. 2 and 3. It erroneously attempted to make synonymous the term "due care" equivalent to ordinary careand the term "highest degree of care", which terms are definitely recognized by statute and by the decisions of our courts as expressing care of different degrees. Hamre v. Conger, supra, and cases therein cited; Burlingame v. Landis, supra. When read and construed as a whole, the given instructions did not correctly state the law for the guidance of the jury. The erroneous advice in plaintiff's Instruction No. 1, that "due care" as used in the instructions meant the highest degree of care, was carried forward and the erroneous confusion of terms was incorporated into the plaintiff's Instructions Nos. 2 and 3; but the use of the erroneous term, "due care," was submitted only with respect to plaintiff's conduct, whereas the use of the proper term, "highest degree of care", was submitted with respect to the conduct of defendant. Thus by contrasting terms of different meaning the submission of care as to degree was less as applied to plaintiff than to defendant to defendant's prejudice.
By express language section 304.010 RSMo 1949, V.A.M.S., provides that every person operating a motor vehicle on the public highways of this state shall "exercise the highest degree of care". The requirement of the exercise of the highest degree of care applies to plaintiff-motorists for their own safety as well as to defendant-motorists for the safety of plaintiffs. Burlingame v. Landis, supra. We cannot understand why an instruction would be given in any case wherein the hypothesized negligent conduct of any motorist on the public highways of this state may be measured by any standard other than that provided by the applicable statute; and, since the effective date of § 304.010, supra, in no case we have examined has it been held that the use of the term "ordinary care" or equivalent terms"due care" or "reasonable care" in submitting a motorist's duty when operating his motor vehicle on a public highway was not erroneous. The cases of Doherty v. St. Louis Butter Co., supra, and King v. Friederich, Mo.App., 43 S.W. 2d 840, 842, cited by plaintiff-respondent, do not so hold. In these cases instructions were given (in effect, as in the instant case) which advised that the term "due care" meant the highest degree of care, or the care of a very careful and prudent person. In the Doherty case the submission was solely humanitarian negligence. The infant plaintiff was not a motorist, his duty to exercise care was not involved, and the wording of the instruction applied specifically to the driver of defendant's truck. This court said the jury could not have been misled by the use of the term "due care" in that case. In the King case, the jury had been advised, by the instruction (No. 3) given in that case, that due care meant such care as a "very careful person would use". The reviewing court said that, if there was error in the use of the term "due care" in other instructions, the instruction (No. 3) obviated the chance of prejudice in that respect. But, in the King case, it is apparent the term "due care" was consistently used in the other instructions.
Since the cause must be remanded for retrial because of errors in plaintiff's Instructions Nos. 1, 2 and 3, and plaintiff's claim for personal injury and for property damage is but one claim or cause of action, Chamberlain v. Mo.-Ark. Coach Lines, 354 Mo. 461, 189 S.W.2d 538, 161 A.L.R. 204. arising out of the vehicular collision, all of the issues of the cause, including the issue of property damage (assuming a separate *870 trial has not been meanwhile had upon the latter issue), should be tried together.
The judgment should be reversed and the cause remanded.
It is so ordered.
LOZIER and COIL, CC., concur.
PER CURIAM.
The foregoing opinion by VAN OSDOL, C., is adopted as the opinion of the court.
All of the Judges concur.