Vernon TRUMP, Plaintiff-Respondent,

v.

Robert BALLINGER, Defendant-Appellant.

No. 46553.

Supreme Court of Missouri,

Division No. 1.

Nov. 10, 1958.

Russell N. Pickett, Eugene E. Andereck, Phil Hauck, Pickett, Andereck & Hauck, Trenton, for appellant.

Thomas J. Layson, Trenton, Clare Magee, William Y. Frick, Unionville, for respondent.

HYDE, Presiding Judge.

Action for $30,000 damages for personal injuries. Defendant had a jury verdict, but the trial court granted a new trial on the ground of error in instructions; and defendant has appealed. It is not contended that plaintiff failed to make a jury case so it is unnecessary to make a complete detailed statement of the facts.

Plaintiff was injured when the car in which he was riding, owned and driven by defendant, ran off the road and overturned. Plaintiff and Eddie Nichols rode with defendant from Trenton to Princeton. On the way back, about 10:30 P.M., with all of them in the front seat, Nichols being in the center, they were driving south on U. S. Highway 65 listening to the car radio, when they reached an "S" curve about six miles south of Princeton. The first curve approached from the north was to the left (east). The pavement from Princeton through and beyond that curve was new 22-foot concrete slab. There was a good bank on that curve, and "it is real easy to make that curve up to speeds of 65 or possibly 70 miles an hour." Beyond the first curve there was a second curve to the right (south) which was marked with a "Slow" sign. (It was about two-tenths of a mile between these curves.) In the middle of this second curve the new wider pavement ended and older 19-foot pavement began. There was no bank whatever on the old pavement, making it "a very treacherous curve if you are not used to that road." The Highway Patrolman, who investigated the occurrence, estimated that the limit going south would be not over 50 miles an hour "and stay on your own side of the road", and he said that would be the maximum safe limit.

Nichols (plaintiff's witness) testified they were going about 60 or 65 miles an hour approaching the first curve and that plaintiff said, "better slow down a little." He said defendant did slow down by letting up on the footfeed, then put on the gas again and went into the second curve at 55 miles an hour. He said: "There wasn't nothing to be alarmed about until we started into the curve and the car started going over the middle line and it looked like it was heading right over the bank and we hollared at him. He turned it a little bit, put on the brakes and began to slide and just went over the bank." The Patrolman described the scene thus: "Back where he went off the highway to a point in the center of the highway just about to the break in the curve was about 273 feet of

light skid marks. No heavy skid marks, relative light, one brake was doing most of the braking. The left brake was doing most of the braking. There was no indication of the right brake holding at all and no way of telling if that was the left front or left rear brake doing the braking." Defendant pleaded guilty in Magistrate Court to careless and reckless driving. Defendant testified as follows: "I don't know how fast we were driving up the road, might have been driving faster, but when I got close to the curve, I knew the curve was there, I just naturally slowed up for them. The first thing I know the car got in a skid on the wrong corner. I cramped my wheels to the left. They always told me to cramp my wheels the way the car was skidding. That didn't do it. I guess I got scared and I slammed on the brakes." Defendant's theory was that there was mud and gravel on the pavement which caused his car to skid, but the Patrolman said he found none. Defendant said he drove into the curve at "about 50 miles per hour".

The court sustained plaintiff's motion for new trial on the grounds that Instruction C, D and E, given at defendant's request, were prejudicial and erroneous. The court stated in its order its views as to the defects in each of these instructions and further stated: "The court believes that the three instructions, considered separately, and taken collectively, gave an unfavorable impression to the jury as to the plaintiff's right of recovery."

■ Instruction C was as follows: "The Court instructs the jury that the mere fact that the Defendant's automobile left the highway and overturned, and that Plaintiff was injured does not, of itself, make Defendant liable in this case. The gist of this action is the charge that Defendant failed to exercise due care, and that because of such failure, Defendant was negligent. The burden of establishing this charge is upon the Plaintiff, and if the evidence bearing on this proposition does not preponderate in favor of the plaintiff,

then the jury will find for the Defendant." The court's order said in part concerning this instruction: "The second sentence of said Instruction C emphasized that the gist of the action was the charge that the defendant failed to exercise due care. This was misleading, abstract, and gave the jury the opportunity to establish its own standard of conduct. It ignored that defendant was under the duty to exercise the highest degree of care toward plaintiff as a guest."

■ This criticism is well taken. In Young v. Anthony, Mo.Sup., 248 S.W.2d 864, 868, 869, we said: "Actually and in legal significance 'due care' does not mean the highest degree of care. The term 'due care' has been held to be equivalent to ordinary care. (Citing cases) * * * Use of the term 'due care' in an application to the hypothesized negligent conduct of either plaintiff or defendant or of both plaintiff and defendant in the instant case, wherein both the parties were motorists on a public highway, was erroneous." In the Young case, we said: "When read and construed as a whole, the given instructions did not correctly state the law for the guidance of the jury." That is just what the trial court found and stated in its order in this case, and by concluding that this made the instruction "misleading" and that the instructions "gave an unfavorable impression to the jury," made a specification of discretionary grounds. 42 V.A.M.S. Supreme Court Rules, rule 1.10. We note that Woods v. Moffitt, 225 Mo.App. 801, 38 S.W.2d 525, relied on by defendant, did not involve the use of the term "due care" in an instruction. "Appellate courts are more liberal in upholding an order granting a new trial than in reversing and remanding a cause, especially in instances, as here, where the order involves the exercise of a judicial discretion on the part of the trial court." Venditti v. St. Louis Public Service Co., 360 Mo. 42, 226 S.W.2d 599, 604, and cases cited; Teague v. Plaza Express Co., 356 Mo. 1186, 205 S.W.2d 563, 566, and cases cited; see also Jones

v. Kansas City, Mo.Sup., 243 S.W.2d 318, 321; Hensley v. Dorr, Mo.Sup., 191 S.W.2d 663, 665. However, we do not find the rest of Instruction C to be erroneous under our ruling in Citizens Bank of Festus v. Missouri Natural Gas Co., Mo.Sup., 314 S.W. 2d 709, cited by plaintiff; see also Osborne v. Goodman, Mo.Sup., 289 S.W.2d 68. Nevertheless, the improper standard of care stated in Instruction C is sufficient, with the defects in the other instructions hereinafter discussed, to sustain the court's order.

■ We also find that the trial court is correct in its view of error in giving Instruction E, which submitted contributory negligence of plaintiff. It submitted failure to request defendant to drive at a slower rate of speed, to keep a close lookout ahead, to keep a lookout for the curve, to stop, slacken the speed of or swerve the automobile, to warn defendant of the improper manner in which he was approaching the curve, to warn defendant that he was not maintaining complete control of the automobile and to protest to defendant as to the manner in which he was driving. The court's order granting a new trial in part stated: "Said instruction was in direct opposition to defendant's own testimony and defense theory. Defendant testified that there was nothing that plaintiff could have done to have changed the situation, that is, to have prevented the upset and collision. And, said instruction places too great a duty on the plaintiff as a guest, and, in addition, failed to require that plaintiff was not under duty to act until after danger became reasonably manifest or known to him, and there was no evidence of causation, that is, there was no testimony that any act or omission of plaintiff was the efficient cause or contributing cause of the upset and injury. Defendant was not entitled to use evidence in direct conflict with his own."

This ruling was based on the following testimony of defendant: ·

"Q. Before this accident you had been over this road on various occasions? A. Yes, sir.

"Q. Would you say many times? A. Yes, sir.

"Q. So you knew the curve was there? A. Yes, sir. * * *

"Q. Do you have any mind that the plaintiff, Vernon Trump, caused this accident by not warning you about the corner before you got there? A. You mean caused it by not warning me?

"Q. Yes. A. No.

"Q. You are not saying that? A. No.

"Q. You are not making that charge? A. No.

"Q. Are you making the charge that he partially caused this accident by failing to warn you of the manner in which you were driving before you got there? A. There wasn't nothing wrong with my driving. * * *

"Q. I will put it this way, do you know of any way or anything that Vernon Trump could have done that would have kept you from running off that curve and overturning? A. No, I don't.

"Q. You are not charging him with anything are you? A. No, sir. * *

"Q. As I understand you there was nothing they could have warned you about. A. No, because there was nothing to warn me about."

Plaintiff says defendant cannot testify one way and instruct another, citing among other cases, Belisle v. Wilson, Mo.Sup., 313 S.W.2d 11, 15; West v. St. Louis-San Francisco Ry. Co., Mo.Sup., 295 S.W.2d 48, 51; Fisher v. Gunn, Mo.Sup., 270 S.W.2d 869, 874; Draper v. Louisville & Nashville R. Co., 348 Mo. 886, 156 S.W.2d 626, 633; Meese v. Thompson, 344 Mo. 777, 129 S.W.2d 847, 850, and the cases there cited;

Rucker v. Alton R. Co., 343 Mo. 929, 123 S.W.2d 24, 26. In view of defendant's positive testimony (affirmed and reaffirmed), we think the trial court was right in its view that by Instruction E defendant sought to have the jury make findings directly in conflict with defendant's own testimony. We also agree with the trial court's view that this instruction is subject to the criticism made in Toburen v. Carter, Mo.Sup., 273 S.W.2d 161, 165, of the instruction in that case, namely: it did not make clear that plaintiff would be guilty of contributory negligence (for failure to warn or request different action) only if in the exercise of ordinary care, he failed to warn defendant after danger from defendant's manner of driving under the circumstances became reasonably manifest or known to him. See also Ketcham v. Thomas, Mo.Sup., 283 S.W.2d 642, 645. It is true, as defendant points out, that substantially this same instruction (with fewer specifications of negligence) was held not to be reversible error in Knox v. Weathers, 363 Mo. 1167, 257 S.W.2d 912, 914, and in Boedeker v. Wright, Mo.Sup., 312 S.W.2d 829, 835, 837. However, the criticism made and upheld as to the instruction in the Toburen case was discussed in the Boedeker case, and it was therein stated that such an instruction "needs clarification in order to be fully satisfactory." Because of the defects in Instruction E, together with the other matters discussed in the court's order concerning this and the other two instructions, the court's action in granting a new trial must be sustained.

■ Instruction D was as follows: "The Court instructs the jury that if you find and believe from the evidence that the collision and upset in question and Plaintiff's injury resulting therefrom was proximately caused by the skidding of Defendant's automobile, and if you further find that there was no act of omission on the part of the Defendant that would justify an inference of any fault on his part that caused said automobile to skid, then your verdict must be for the Defendant and against the Plaintiff." The trial court thought this instruction ignored defendant's theory and testimony that there was mud and gravel on the pavement which caused his car to skid, when he was driving in a proper manner, and required no such findings. The instruction is subject to the criticism that it assumes "the skidding of defendant's automobile". Plaintiff's main instruction submitted findings that defendant's automobile "left the pavement of said Highway at said curve, ran off the Highway and overturned"; that defendant operated the automobile "into said curve at a speed of 50 or more miles per hour"; "that he failed to keep and maintain a reasonable, sufficient lookout ahead"; and that the speed at which he was operating the automobile "while approaching and reaching the curve was an excessive and dangerous rate of speed under the circumstances." Instruction D did not require a finding that defendant was not guilty of any negligence submitted in other instructions but, assuming the car skidded, only required a finding that the skidding was not due to his fault. As hereinabove stated, the testimony of the Patrolman was that he found no mud and gravel on the pavement and that there were no heavy skid marks, apparently only the mark of the brake action on one side, which commenced in the center of the highway at the break in the curve. Defendant's testimony was that his car skidded before he applied his brakes. We also note the instruction covers only an "act of omission", although the case defendant cites for its language, Polokoff v. Sanell, Mo.App., 52 S.W.2d 443, 446, says "any act of omission or commission". It is true as defendant says, citing also Girratono v. Kansas City Public Service Co., 363 Mo. 359, 251 S.W.2d 59, and Evans v. Colombo, Mo.App., 311 S.W.2d 141, that proof of skidding only does not prove negligence. However, plaintiff's case was not based on skidding but instead was based on driving too fast to make the curve; and plaintiff's evidence was there was no skidding before defendant's car went over the middle line.

The order for a new trial is affirmed.

All concur.