**Ralph KAUP, Plaintiff-Respondent,**

v.

**Carl Henry LUTHJOHAN and Truckaway Corporation, Defendants-Appellants.**

No. 30947.

St. Louis Court of Appeals.

Missouri.

Sept. 18, 1962.

Motions for Rehearing or to Modify Opinion Denied Oct. 15, 1962.

Chapman & Chapman, Arthur Litz, Jerome M. McLaughlin, St. Louis, for appellants.

Donald S. Hilleary, John D. Hasler, St. Louis, for respondent.

HARRY A. HALL, Special Judge.

Plaintiff brought suit for injuries resulting from an automobile-truck collision February 19, 1959, on U. S. Highway 66 at the "T" intersection with Lafayette Avenue in Florissant, St. Louis County, Missouri.

Plaintiff submitted his case on the humanitarian theory. The jury found for the defendants on plaintiff's petition and in favor of the defendant truck company on its counterclaim for $993.37 property damage to its truck. The court sustained plaintiff's motions for new trial as to his cause of action and also as to the defendants' counterclaim, because of error in giving instructions 3 and 9 on behalf of defendants, and in refusing plaintiff's Instruction A. Defendants have appealed from the rulings of the court.

Highway 66, where the collision occurred, is a two-lane paved highway running east and west and is a through street protected by a stop sign against traffic from the north on Lafayette, which deadends at this intersection. An overhead signal light was red for Lafayette and on caution for Highway 66 traffic.

Plaintiff testified that it was a bright, sunny morning, the streets were dry, and as

he drove south on Lafayette approaching the highway he stopped five to six feet from the north edge of the highway pavement, from which point the view was clear to the east or his left for 100 to 200 feet. He looked to his right and left and seeing no traffic proceeded with a left turn on the highway and accelerated gradually from his stop to a speed of 10 miles per hour, traveling some 17 to 20 feet when the collision occurred. The sun was in his eyes and he didn't see the truck nor know where it came from.

Defendant Luthjohan stated he was driving a new truck chassis for the defendant Truckaway Corporation, carrying two additional truck chassis "piggy back," in a westerly direction toward the Lafayette intersection, going 30 to 35 miles per hour. He first saw plaintiff when 50 to 60 feet from the intersection when plaintiff was north of the pavement 6 to 10 feet and almost stopped, and made what he described as a "rolling stop." He put his foot on the brake and slacked up because he didn't know what plaintiff was going to do, then plaintiff looked right at him and he thought plaintiff was going to stop, so he proceeded toward the intersection. That he continued to watch plaintiff's car and when he was about 15 feet away, plaintiff suddenly pulled out in front of him, making a left hand turn. He applied his brakes and swerved to his right and had reduced his speed to 25 miles per hour at the time of the impact between the left front of his truck and the left side of plaintiff's automobile. Luthjohan testified he could stop in 40 to 50 feet while traveling 30 to 35 miles per hour, and in 30 feet when going 25 miles per hour. There were no other witnesses to the accident. In view of the errors assigned, it will not be necessary to consider the nature or extent of plaintiff's injuries.

■ Defendants' first assignment of error is the refusal of the court to sustain their motions for directed verdict for the reason that plaintiff failed to make a submissible case. Plaintiff relies upon the driver's statement that when 50 to 60 feet away and going 30 to 35 miles per hour he saw plaintiff almost stopped some 6 to 10 feet from the pavement edge, that he put his foot on his brake and slacked up, and at that speed could have stopped in 40 to 50 feet. In view of plaintiff's evidence that he started from that point and proceeded gradually with his left turn, traveling 17 to 20 feet and attaining a speed of 10 miles per hour to the point of collision, we cannot say as a matter of law that plaintiff failed to make a submissible case under the humanitarian doctrine. Taking the estimates of speed, location of the vehicles and stopping distances most favorable to plaintiff, and using these in relation to the time and location that Luthjohan saw plaintiff make a "rolling stop" and the fact that the driver continued to observe plaintiff thereafter as he entered a position of imminent peril and would have stopped except that he thought plaintiff had seen him and was going to stop, the jury could have found that by the exercise of the highest degree of care the truck driver could have avoided the collision. We therefore hold that the court did not err in overruling defendants' motions for directed verdicts.

■ Defendants complain because the court granted a new trial because of error in giving defendants' Instruction No. 3, which is as follows:

"The Court instructs the jury that plaintiff charges that the defendants saw, or by the exercise of the highest degree of care, could have seen the plaintiff's automobile proceeding south on Lafayette Avenue and into its intersection with Highway 66, and in a position of imminent peril of being struck, in time thereafter, by the exercise of the highest degree of care, with the means and appliances at hand and with safety to defendant Luthjohan and his truck-chassis, to have stopped his truck-chassis or sufficiently slackened the speed thereof, and by so doing either act could have avoided colliding with plaintiff's automobile.

"In reference to said charge, the Court instructs the jury that if you believe and find from the evidence that as soon as the automobile which plaintiff was driving reached a position of peril of colliding with defendants' truck-chassis, the driver of said truck-chassis, Carl Luthjohan, could not, by the exercise of due care, have prevented the automobile which plaintiff was driving from colliding with the truck-chassis of defendants, then and in that case plaintiff is not entitled to recover, and your verdict shall be for the defendants Carl Luthjohan and Truckaway Corporation."

Paragraph one of this instruction correctly recites plaintiff's charge as requiring the defendants to exercise the highest degree of care. Paragraph two in effect tells the jury to ignore plaintiff's charge in this respect and find for the defendants if the driver could not have prevented the collision by the exercise of due care.

Under the law, defendants were bound to exercise the highest degree of care, and this instruction which measured their liability by a lesser degree of care was an erroneous misdirection.

In Young v. Anthony, Mo., 248 S.W.2d 864, 868, the court, in disposing of a similar conflict in instructions, said:

" * * * actually and in legal significance 'due care' does not mean the highest degree of care. The term 'due care' has been held to be equivalent to ordinary care. Wilson v. Chattin, supra (335 Mo. 375, 72 S.W.2d 1001); Doherty v. St. Louis Butter Co., 339 Mo. 996, 98 S.W.2d 742; Hamre v. Conger, supra (357 Mo. 497, 209 S.W.2d 242). And the use of the term 'due care' in an application to the hypothesized negligent conduct of either plaintiff or defendant or of both plaintiff and defendant in the instant case, wherein both the parties were motorists on a public highway, was erroneous. * * *"

The legislature has fixed the standard of care to be exercised by all motorists in this state as the "highest degree of care," Section 304.010 RSMo 1959, V.A.M.S., and since its enactment a submission using the term "ordinary care" or equivalent terms "due care" or "reasonable care" has been condemned by our courts. Young v. Anthony, supra; Trump v. Ballinger, Mo., 317 S.W.2d 355.

In the Trump case, the Supreme Court considered a similar instruction given on behalf of the defendant which told the jury, (317 S.W.2d 355, 357) " * * * The gist of this action is the charge that Defendant failed to exercise due care, and that because of such failure, Defendant was negligent. The burden of establishing this charge is upon the Plaintiff, * * *."

In approving the trial court's action granting a new trial because of the erroneous instruction the court adopted this language (317 S.W.2d 355, 357):

" ' * * * said Instruction C emphasized that the gist of the action was the charge that the defendant failed to exercise due care. This was misleading, abstract, and gave the jury the opportunity to establish its own standard of conduct. It ignored that defendant was under the duty to exercise the highest degree of care toward plaintiff * * *.' "

■ The giving of Instruction 3 was reversible error and the trial court properly granted a new trial for this reason.

Instruction No. 9, given on behalf of defendant Truckaway Corporation, submitted its counterclaim for damages to its truck based on plaintiff's primary negligence in driving on Highway 66 in front of its truck being operated by defendant Luthjohan, when it was approaching so closely as to constitute an imminent hazard. The instruction required a finding that defendant Luthjohan was exercising the highest degree of care but made no reference to plaintiff's humanitarian submission, nor did it require

the jury to find that defendant Luthjohan was not negligent as submitted in other instructions.

 A defendant, in submitting primary or sole cause negligence instructions when plaintiff is proceeding under the humanitarian theory, must be careful to avoid language that conflicts with plaintiff's instructions or which might be so understood as to authorize the jury to find that plaintiff's antecedent negligence constitutes a bar to plaintiff's recovery. Mott v. Chicago, R. I. & P. Ry. Co., Mo.App., 79 S.W.2d 1057; Johnson v. Cox, Mo., 262 S.W.2d 13; Wabash R. Co. v. Dannen Mills, Mo.App., 279 S.W.2d 50, 365 Mo. 827, 288 S.W.2d 926.

In the Mott case the court said (79 S.W. 2d 1057, 1062):

> " * * * It will be noted that, in effect the instruction tells the jury that if deceased Lloyd Mott was himself negligent then the jury should find for defendant. But there was the charge of negligence under the 'humanitarian' or 'last chance' rule. And in that event, even if the deceased, Lloyd Mott, were negligent, that would not be a defense under that rule. Hence defendant's instruction conflicts with plaintiffs' instruction No. 6. It is well settled that conflicting instructions constitute error. * * *"

 Certainly Instruction 9, when compared with Instruction 3 in requiring different degrees of care on the part of the defendants was misleading and confusing, and submitting plaintiff's antecedent negligence without referring to or in some manner negating defendants' humanitarian negligence was conflicting, confusing, and gave an unfavorable impression to the jury. The court's action in granting a new trial for error in giving Instruction 9 was therefore proper.

 Appellate courts are liberal in sustaining the granting of a new trial by the trial court, especially where as here the order involves the exercise of judicial discretion. Trump v. Ballinger, supra; Venditti v. St. Louis Public Service Co., 360 Mo. 42, 226 S.W.2d 599; Teague v. Plaza Express Co., 356 Mo. 1186, 205 S.W.2d 563.

Plaintiff concedes that the trial court properly refused plaintiff's Instruction A, which related to plaintiff's damages for lost wages, and defendants' objection to that portion of the trial court's order granting a new trial will be sustained.

For the reasons assigned, the action of the trial court in sustaining plaintiff's motion for new trial on plaintiff's petition and defendant's counterclaim will be affirmed and the cause is remanded.

ANDERSON, P. J., and WOLFE, J., concur.